**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James Edward EVANS, Defendant–Appellant.**

**No. 90–8598.**

United States Court of Appeals, Fifth Circuit.

Dec. 18, 1991.

---

188

188

William R. Maynard, Asst. Federal Public Defender, Lucien B. Campbell, Federal Public Defender, El Paso, Tex., for defendant-appellant.

Philip Police, LeRoy Morgan Jahn, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., Joseph W. Galenski, Asst. U.S. Atty., El Paso, Tex., for plaintiff-appellee.

188

Before WISDOM, HIGGINBOTHAM, and SMITH, Circuit Judges.

WISDOM, Circuit Judge:

The appellant was convicted for the knowing possession and use of a gun in El Paso, Texas. That conviction was based on the statement of a non-testifying witness that the defendant possessed an identical gun, which he ordinarily kept, and had not left, at home in St. Louis, Missouri. Because such evidence is inadmissible hearsay, and because its admission in this case prejudiced the defendant, we REVERSE his convictions for possessing and using the gun, and REMAND for resentencing on his conviction for possessing with intent to distribute marijuana.

## I. BACKGROUND

James Edward Evans was arrested in El Paso, Texas in March 1990. Agents of the Bureau of Alcohol, Tobacco and Firearms ("BATF") had tracked him to El Paso from his home in St. Louis. They observed him for several days, and amassed extensive evidence identifying him as the purchaser

of a quantity of drugs. After concluding that he had completed that purchase and was preparing to leave Texas with the drugs, they advised local police to stop him on the highway. Those police found over 30 pounds of marijuana in the trunk of his car, and a pistol in a sock on the floorboard behind the driver's seat.

The pistol apparently matched a gun described to BATF Agent Terry Bohan at Evans's apartment in St. Louis. The government contends that a Ms. Melton, encountered at Evans's apartment during the execution of a search warrant, told Bohan that Evans owned a gun, showed him where Evans usually kept it (it was not there), and then described the gun to him. The government contends that the gun Melton described is the gun later found in Evans's car.

Evans was indicted on the following counts:

1) being a felon in knowing possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1);

2) possessing marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and

3) using a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).

Before trial Evans moved to exclude the government's use of certain evidence (including Ms. Melton's statement) obtained as a result of the search of his St. Louis apartment. Evans's counsel expressed concern that information about Evans's possession of a gun in St. Louis (and its absence from its regular hiding place) would be used to prove his guilt in the knowing possession of a gun in El Paso. As he said, "we're here to try what Mr. Evans possessed and knew he possessed." The prosecutor admitted his intention to introduce evidence of Ms. Melton's description of the gun, but promised that he would use it only to justify the surveillance conducted in El Paso.

The court agreed to let the prosecution "touch upon [the statement] without going into all the details". The judge said that he would entertain an objection from the defense if the prosecution referred to the gun other than to "give us a background of what's going on" in El Paso. The prosecution assured the court that its evidence would not include Ms. Melton's statement, but only testimony as to Bohan's own observations and the information he sent to El Paso. The court gave this final warning before trial: "I'll let them [the prosecution] briefly discuss what they thought you [Evans] might have in possession just to lay the background so the jury knows what's going on, but outside, going into any specific details, I'll limit you [the prosecutor] in that regard."

In his opening statement the prosecutor connected Ms. Melton's statement and the gun not found in St. Louis to the gun found in Texas. He said, "during the course of that search warrant, they received information concerning the pistol that was in the defendant's possession"; in describing the ultimate search of Evans's car, he said, "they find a .9 millimeter Baretta, or the pistol that we've been talking about."

In his own opening statement, Evans (who, with the help of court-appointed counsel, represented himself at trial) contended that he had not known what was in his car when he was stopped in El Paso.

When the prosecutor began questioning Agent Bohan about the gun Evans usually kept in St. Louis, the defense renewed its pretrial hearsay objection. The court overruled it, but allowed the defense a running objection to this evidence.

Bohan testified that he had received information that Evans usually kept a semiautomatic pistol in his closet. Bohan was unable to find it there. The only identified source of this information was Ms. Melton. Bohan also testified that an unidentified source had told him that Evans was in El Paso to buy drugs.

At the close of the government's case, Evans's counsel moved for acquittal. As to counts 1 and 2 he argued "that there is simply insufficient evidence that the physical location of these items in the vehicle, which arguably which would be physical possession, insufficient evidence that it was

known. That is, that Mr. Evans knew that these items were in his possession." As to count 3 he said, "I don't believe there's any evidence other than the mere fact that the gun was found in the vehicle.... There's no evidence that is sufficient for the jury to find [that] possession [of the gun], if there was possession, was in connection with possession of marijuana." The court denied the defendant's motion.

In his closing argument the prosecutor said:

> Mr. Bohan, based on the information he received, contacted agent Sanders here with the Alcohol, Tobacco and Firearms office here in El Paso, and he related to Officer Sanders the following. That Mr. Evans was believed to be here in El Paso. That he was believed to have a certain type of weapon with him, a semi automatic possibly a .9 millimeter that—or a .32, depending—but a smaller weapon than the officers had or carried but that it was an automatic. It had been described to him.
>
> . . . .
>
> Based on the information that the officers had received from St. Louis that this individual had previously been convicted of a felony, that he had a weapon in his possession, that he had, that they had an accurate description of the weapon, and that he was here to do a narcotics deal.

In his own closing argument, Evans contended that the government had not shown where the marijuana and gun had come from. He said, "If I knew marijuana or a gun was in a car I was driving, I'll guarantee you I wouldn't be in that car." With weak syntax but strong legal effect he got to the heart of his case; he asked, "Did I knowingly know that marijuana or a gun is in the car? They assume that I knew this or they're claiming the possibility existed. Knowingly, to know something."

The prosecutor rebutted Evans's defense with continued reliance on the truth of Melton's statement:

What this case comes down to is, if you look back at the information that was received from the ATF agent up in St. Louis, is one, we've received information that defendant was down here to do a narcotics deal.

Secondly, the officers had received a very detailed description as to the weapon that this individual would be carrying with him while he was here to commit that narcotics transaction, and we know now that information was incredibly reliable because what happens? When the vehicle is stopped and that vehicle is searched, right behind the defendant, within ready access to protect his narcotics load, is the pistol that matched the description that was provided from St. Louis. Coincidental, good police work because the ATF agent took the time when he was there conducting that search to get a description of that weapon so that he could relay it to his fellow officers down here in El Paso for their safety and for their protection.

The jury found Evans guilty on all three counts. The court gave him a 15-year sentence on count 1—to be served concurrently with a 5-year sentence on count 2—and a separate 5-year sentence on count 3.

Evans filed a timely appeal. He raised three issues for review: the insufficiency of the evidence of his previous conviction of a crime punishable by imprisonment of more than one year; the prejudicial hearsay of Ms. Melton's statements; and the invalidity of his sentence enhancement under the Armed Career Criminal Act. Because we decide this appeal on the hearsay issue alone, we will not discuss the first or third issues.

## II. DISCUSSION

Hearsay is the use of a statement by a non-testifying witness to show that the contents of the statement are true.[1] With limited exceptions, it is inadmissible.[2] If

1. Fed.R.Evid. 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted".

2. Fed.R.Evid. 802.

used to show that what she said was true (i.e., that Evans *did* possess a gun matching her description and *did* ordinarily keep it in St. Louis), the statement of Ms. Melton would be hearsay, and would be inadmissible at trial. If used to show only why the BATF were observing Evans, it would not be hearsay. We have allowed the admission of such evidence when its use is strictly limited to showing the jury that "the officers did not act in a vacuum".[3] The same evidence becomes inadmissible hearsay if it also points directly at the defendant and his guilt in the crime charged.[4] When such evidence comes into play, the prosecution must be circumspect in its use, and the trial court must be vigilant in preventing its abuse. Although the trial court has broad discretion over evidentiary matters, to admit such evidence when it singles out the defendant would constitute an abuse of that discretion.

■ Although such an abuse should always be avoided, it does not always require a reversal. We must consider the other evidence in the case, and then decide if the inadmissible evidence actually contributed to the jury's verdict.[5] We will find such evidence harmful and reverse a conviction only if it had a "substantial impact" on the jury's verdict.[6]

A. Count 2—Possession with Intent to Distribute Marijuana

■ As to Evans's conviction of possession with intent to distribute marijuana, even if the statement of an unidentified informant that Evans was in El Paso to conduct a drug deal was used as hearsay, the error in admitting it was harmless, and had little impact on his ultimate conviction. The agents who observed Evans for many days in El Paso amassed (and presented at trial) an overwhelming amount of evidence against him. The accumulation of that evidence, presented below, is more than sufficient to show that Evans was participating in a prolonged transaction for the purchase of drugs.

■ While in El Paso, Evans moved back and forth between two motels. He drove to an auto garage and returned to his room carrying a bag containing a green leafy substance. He went to a K-Mart to have copies made of his car keys. When he came out of the store, he had trouble opening his car door; he returned to the store, asked a clerk for help with his key, returned to his car, and left. He returned to the auto garage, where an employee came out to his car with a container and lifted its lid to show him the contents before Evans noted a BATF agent watching him; the employee then left his car. Two visitors came to Evans's room and left, driving Evans's car and leaving their own. They returned and drove away in both cars, leaving Evans in the motel. Evans's car returned. A passenger got out and entered Evans's room; the driver drove to a nearby Denny's restaurant. The passenger left Evans's room and walked to Denny's. The other car arrived at Denny's, and its driver joined the passenger and driver of Evans's car in the restaurant. Evans then left his room, walked to Denny's, bought a newspaper outside the window where the three men were seated, and then drove away in his own car. At a nearby supermarket parking lot he stopped, opened the trunk, rearranged its contents, and returned to his motel, where he gathered his belongings, packed them into his car, and left.

Viewing the evidence as a whole, the probative value of a statement that Evans was in El Paso for a drug deal is virtually insignificant. It certainly did not contribute to the jury's verdict that Evans was in knowing possession of the marijuana in his car.

B. Counts 1 and 3—Knowing Possession and Use of a Gun

3. *United States v. Hernandez,* 441 F.2d 157, 164 (5th Cir.), *cert. denied,* 404 U.S. 847, 92 S.Ct. 150, 30 L.Ed.2d 84 (1971).

4. *United States v. Gomez,* 529 F.2d 412, 416–17 (5th Cir.1976); *Hernandez,* 441 F.2d at 164.

5. *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967).

6. *Gomez,* 529 F.2d at 417; *United States v. Rodriguez,* 524 F.2d 485 (5th Cir.1975).

The use of Ms. Melton's statement to support the gun convictions differed fundamentally from the use of a statement placing Evans in El Paso for a drug deal. Melton's alleged statement was inherently susceptible to the abuses we noted above. And the prosecution did not hesitate to use, emphasize, and reemphasize that statement to show that Evans *did* possess a gun identical to the pistol found in his car in El Paso. The trial court abused its discretion in overruling Evans's objection to this hearsay evidence. Because the evidence constituted virtually the *only* evidence proving an essential element of counts 1 and 3 (that Evans's possession was *knowing* )[7] we find that it did have a substantial impact on his conviction.

Our extensive quotations from the transcript reveal a textbook example of the abuse of hearsay. The government relied on Ms. Melton's statements to show the truth of what she said. The prosecutor referred repeatedly to her declaration that Evans owned a pistol, and to her description of it, as proof that Evans did own a pistol of such a description. The use of her statements had almost nothing to do with explaining the background of the surveillance of Evans. It had almost everything to do with showing that Evans was guilty of counts 1 and 3.

Evans's defense to counts 1 and 3 was his ignorance of the gun's presence in his car, a car driven by several other drug dealers immediately before he retook control of it. The prosecution used Melton's statement, and that statement alone, to refute this defense. The statement was its only direct evidence showing that Evans would have known the gun was there.

Unlike the mass of evidence tending to show Evans's participation in a drug deal, there is little non-hearsay support for a finding that Evans also possessed a gun. We have reviewed the record and see only the following, meagre support for a finding of knowledge.

BATF Agent Manny Olmos observed Evans when he returned to his motel after leaving Denny's and stopping in a parking lot to examine the marijuana in his trunk. Olmos watched from a vehicle 8–10 feet away from Evans's car; he said that nothing stood between him and that car. Yet he never saw Evans put a gun into the car. He did see Evans carry clothes and bags from his motel room and put them in the car. When pressed by the prosecutor to refer to the car's floorboard areas, Olmos offered only this equivocal statement: "I observed him lean, yes, sir, onto the floorboard and, yes, sir, put, possibly put articles in there".

That sentence is the only evidence aside from Melton's statement that might prove Evans's knowledge that a gun was on his rear floorboard. When the government did refer to Olmos's statement, it exaggerated his certainty. The prosecutor said Evans was "observed putting items on the floor behind the driver's seat...." But aside from this misleading characterization, the prosecutor almost ignored any corroborative value of Olmos's observations. We infer that the government failed to rely more on this weak (but admissible) evidence because it intended to rely so extensively on the infinitely more effective (and inadmissible) hearsay statements of Ms. Melton. In its closing argument the prosecution asked the jury to base the gun verdicts on the truth of Melton's statements. It must have known, as we recognize now, that its only other evidence was entirely insufficient to prove Evans guilty.

Otherwise, the government's evidence offers more support to Evans's defense than to its own case. Before Evans got into his car at Denny's it had been driven, as even the government admits, by at least two or three other people. Nor was the gun—*any* gun—seen during more than five days of constant government surveillance of Evans. In fact, the only time that the government admits it gave up surveillance of Evans's car (because it suspected counter-

---

**7.** Knowledge of possession is an essential element of 18 U.S.C. § 922(g)(1) (count 1), *see United States v. Dancy,* 861 F.2d 77, 81 (5th Cir.1988); knowledge of use is an essential element of 18 U.S.C. § 924(c)(1) (count 3), *United States v. Wilson,* 884 F.2d 174, 177–79 (5th Cir. 1989).

surveillance) was when those other men drove it. Further, the government's case does not explain whether Evans kept the gun in the car or in his motel room. If the former, when Evans stopped after leaving Denny's and looked in his trunk to examine the marijuana left there by others, it seems odd that he did not look into the back seat to see if they had removed his gun. If the latter, why did Olmos not see Evans put a gun into the car? Finally, the government offered no evidence connecting the sock in which the gun was found to Evans (for example, by matching it to a lone sock in his luggage or apartment).

It is certainly not beyond the realms of probability that the gun did belong to Evans, and that he knew it to be in the car. But we cannot ignore—as the government ignored—the constitutional and equitable logic of the hearsay rule. Without having produced the declarant, Ms. Melton, to confirm her statement to Bohan (and to be subjected to cross-examination), the government violated Evans's Sixth Amendment right to confront the witnesses against him. The government now asks this Court to affirm two convictions and a twenty-year jail sentence based on evidence that Bohan himself could simply have made up. On such a foundation a criminal conviction may not stand.

### III.   CONCLUSION

Because the government relied so heavily on inadmissible hearsay evidence to support Evans' convictions for knowingly possessing a gun and using a gun in a drug trafficking crime, those convictions must be reversed. Hearsay evidence did not similarly taint his conviction for possession with intent to distribute marijuana. The court's sentence for that conviction, however, was predicated on the validity of the other two. As for count 2, we therefore AFFIRM the conviction but VACATE the sentence and REMAND for resentencing; as for counts 1 and 3 we REVERSE the convictions, VACATE the sentences, and REMAND for retrial.