# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50086

United States Court of Appeals
Fifth Circuit

**FILED**
May 16, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

COY JONES,

Defendant - Appellant

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Consolidated With
Case No. 18-50088

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

COY MARSHALL JONES,

Defendant - Appellant

Appeals from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, SMITH, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Coy Jones was convicted by a jury of possessing and conspiring to possess with the intent to distribute methamphetamine, possessing a firearm as a

No. 18-50086

convicted felon, and possessing a firearm in furtherance of a drug trafficking crime. We hold that Jones's rights under the Confrontation Clause were violated when a law enforcement officer testified that he knew Jones had received a large amount of methamphetamine because of what the officer was told by a confidential informant. This error was not invited by the defense and was not harmless. We therefore vacate Jones's convictions and the related revocation of his supervised release and remand for further proceedings.

## I.

## A.

Jones was arrested in the course of an investigation into suspected large-scale methamphetamine distribution by Eredy Cruz-Ortiz. Acting on tips from a confidential informant, law enforcement officers observed Cruz-Ortiz meet with various individuals in Austin-area parking lots between August 2016 and May 2017. On August 23, 2016, for instance, Cruz-Ortiz met with Imran Rehman to sell him methamphetamine. Rehman later testified that he met with Cruz-Ortiz about 25 to 30 times to purchase methamphetamine.[1] Another individual, Julio Rogel Diaz, met with Cruz-Ortiz in a parking lot on September 23, 2016, and was subsequently stopped by law enforcement with about 700 grams of methamphetamine.

Law enforcement officers also observed Jones meet with Cruz-Ortiz on several occasions. On both September 20 and September 28, 2016, Jones was seen briefly entering Cruz-Ortiz's vehicle in a Target parking lot and leaving the vehicle holding a bag. On the latter occasion, Jones drove from parking spot to parking spot for about an hour before Cruz-Ortiz arrived, but did not

---

[1]     Rehman also testified that he did not know Jones and had never seen him before trial.

2

enter any stores.[2] Jones was not searched or arrested on either date, and law enforcement officers were unable to definitively ascertain the content of the bags. On October 6, 2016, Jones was again observed in the Target parking lot moving from spot to spot, but he left without meeting anyone. Detective Michelle Langham, one of the case agents on the investigation, testified that she believed Jones left because he spotted surveillance units.

About six months later, on April 3, 2017, law enforcement officers—again acting on a tip from their confidential informant—conducted surveillance of the parking lot of a Valero/Wag-A-Bag gas station. Detective Langham testified that the surveillance team observed Jones arrive, pull up to the gas pumps, drive back and forth in the area for about an hour, return to the parking lot, and meet up with Cruz-Ortiz's vehicle. Both vehicles then drove out of the parking lot in tandem. Detective Langham acknowledged that she did not observe any exchange of items between Jones and Cruz-Ortiz and she did not stop Jones or seize any drugs on this date.

The central events in this case occurred on May 3, 2017. Special Agent Royce Clayborne received a tip from the confidential informant that a drug deal would occur at the same Valero on May 3, 2017.  A surveillance team set up in the area and observed Jones arrive and pull alongside a truck driven by someone they identified as Cruz-Ortiz's roommate. Detective Langham testified that Jones gestured to the other driver, and both vehicles drove off together. Officers followed the two vehicles as they left the gas station and traveled down County Road 213, a lightly traveled rural road. The vehicles briefly passed out of view. When Detective Langham drove by, she saw the two vehicles meet for less than a minute in a dirt pull-off on the side of the road

---

[2]     Jones points to photographic evidence in the record that he did enter the Target store on September 20, 2016.

3

and then drive off in different directions. Nobody saw any transaction or exchange of items between Jones and the other driver, and nobody observed Jones in possession of a firearm. The individual believed to be Cruz-Ortiz's roommate was not followed or stopped after this encounter.

Officers instead followed Jones as he turned onto County Road 201. Detective Langham directed a sheriff's deputy to stop Jones for a traffic violation. Jones did not immediately stop when the deputy activated his emergency lights. Instead, Jones abruptly sped up and drove up to 90 miles per hour on a 40-mile-an-hour road for about a mile, passing out of view at certain points. Law enforcement officers did not observe Jones throw anything from his truck but, when Jones finally stopped, the windows on both sides of his truck were down. Officers arrested Jones and searched his truck, but found no drugs or firearms.

With the assistance of canine units, law enforcement then searched both sides of County Road 201. After one to two hours of searching, officers found an unloaded pistol in a cactus patch on what would have been the passenger side of Jones's vehicle, about a quarter of a mile from where Jones ultimately stopped. The pistol was wedged into a cactus and covered in dirt and cactus pollen. Detective Langham testified that the pistol was not rusted and was not covered by leaves or other objects, and she did not believe it had been there for a long period of time. Officers also found a gun magazine nearby.

A sheriff's deputy driving to collect the gun noticed a Ziploc bag approximately a quarter of a mile from where the gun was found and on the opposite side of the road. The Ziploc, found next to a reusable plastic bag, contained about 982 grams of methamphetamine. Detective Langham testified that both the gun and the methamphetamine were found in an area where the sheriff's deputy lost sight of Jones as he sped down the road. Detective Langham and Agent Clayborne testified that they had extensive experience in

No. 18-50086

drug investigations and had never randomly encountered a kilogram of methamphetamine on the side of the road. Fingerprint analysis was conducted, but there were no usable prints on the methamphetamine bag or the pistol, and the usable prints on the reusable plastic bag were either inconclusive or did not match Jones.

Jones was interrogated on the night of his arrest. He told a detective that he did not intentionally flee the sheriff's deputy but was instead attempting to get away from an individual who attempted to fight him at the Valero. Jones stated that he did not see the deputy or his blue lights. As Jones now acknowledges, this description of a fight at the Valero was inconsistent with what the surveillance team observed. Jones did not admit to possessing a firearm or to possessing methamphetamine.

B.

Jones was subsequently charged with (1) possession with intent to distribute 500 grams or more of methamphetamine, (2) conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, (3) possession of a firearm by a convicted felon, and (4) possession of a firearm in furtherance of a drug trafficking crime. The government filed notice of its intent to introduce evidence of other crimes under Federal Rule of Evidence 404(b), and Jones filed a motion to exclude this evidence. Jones also filed pretrial motions to compel disclosure of the identity of the government's confidential informant and to exclude testimony related to the confidential informant under Federal Rule of Evidence 403 and the Confrontation Clause of the Sixth Amendment. The district court denied the motion to disclose the confidential informant, and stated that it was denying the motion to exclude testimony "at this time prior to trial." The court explained that "[t]he information, I suspect, is simply going to be a suspected drug transaction at

that address," but noted that "[i]f the government is going to go further, the government needs to tell counsel."

The case proceeded to a four-day jury trial. At trial, law enforcement officers testified about their investigation into Cruz-Ortiz's suspected methamphetamine distribution and their surveillance of Cruz-Ortiz and Jones. This testimony included multiple references to tips and other information received from the confidential informant. Jones objected to this testimony on hearsay grounds. The district court sustained some objections, but determined that other references to the confidential informant were admissible to explain the officers' actions rather than for the truth of the matter asserted in the statements.

Over Jones's continued objection, the district court also admitted evidence of Jones's prior judgment of conviction. The district court instructed the jury that it could not consider the prior conviction as proof of the crimes charged, except as to the charge for being a felon in possession of a firearm. The district court further instructed the jury that, if it found beyond a reasonable doubt from other evidence that Jones committed the acts charged in the indictment, it could consider evidence of similar acts allegedly committed on other occasions to determine intent, motive, opportunity, plan, or absence of mistake.

The district court denied Jones's motion for a judgment of acquittal, and the jury found Jones guilty on all four counts. The district court later denied a post-trial motion for judgment of acquittal or, alternatively, a new trial. Jones was sentenced to a total of 300 months' imprisonment, the mandatory minimum for his offenses. At the same sentencing hearing, the district court found that Jones violated his supervised release on the 2010 federal conviction because of his new criminal conviction in this case. The district court sentenced

No. 18-50086

Jones to 18 months' imprisonment on the revocation, to run consecutively to his 300 month term.

Jones now appeals his convictions and the revocation of his supervised release. He argues that (1) the district court erred by admitting evidence of his prior conviction, (2) testimony regarding the confidential informant violated his rights under the Confrontation Clause, (3) the district court erred by not ordering disclosure of the identity of the confidential informant, and (4) the evidence was insufficient to support the jury's verdict on any of the four counts. Jones further contends that his revocation judgment must be vacated because it was predicated on an invalid conviction. We address each argument in turn.

II.

Under Federal Rule of Evidence 404(b), evidence of a defendant's past crime "is not admissible to prove a person's character," but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Jones properly objected to the admission of his prior judgment of conviction. "We review the district court's admission of extrinsic offense evidence over a 404(b) objection under a 'heightened' abuse of discretion standard." *United States v. Jackson*, 339 F.3d 349, 354 (5th Cir. 2003) (quoting *United States v. Wisenbaker*, 14 F.3d 1022, 1028 (5th Cir. 1994)). The burden is on the government to demonstrate "that a prior conviction is relevant and admissible under 404(b)." *United States v. Wallace*, 759 F.3d 486, 494 (5th Cir. 2014).

The admissibility of a prior conviction "under Rule 404(b) hinges on whether (1) it is relevant to an issue other than the defendant's character, and (2) it 'possess[es] probative value that is not substantially outweighed by its undue prejudice' under Federal Rule of Evidence 403." *United States v. Smith*, 804 F.3d 724, 735 (5th Cir. 2015) (quoting *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc)). "We consider several factors in determining

7

whether the prejudicial effect of the extrinsic evidence substantially outweighs its probative value: (1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions." *United States v. Kinchen*, 729 F.3d 466, 473 (5th Cir. 2013). We also "consider the overall prejudicial effect of the extrinsic evidence." *United States v. Juarez*, 866 F.3d 622, 627 (5th Cir. 2017).

In this case, Jones was charged with being a felon in possession of a firearm, and the evidence of his prior conviction was relevant and necessary to establish an element of this offense, namely, that he was a felon. Jones does not point to any stipulation in the record to a prior felony conviction and he does not explain how the government could have proven this element without introducing his judgment of conviction. Nor does he argue that the district court should have severed the felon-in-possession charge from his other counts. Accordingly, the district court did not err in admitting Jones's prior conviction as substantive evidence of the felon-in-possession charge. *See United States v. Turner*, 674 F.3d 420, 430 (5th Cir. 2012).

Jones primarily argues that the government impermissibly used his prior conviction for purposes beyond establishing that he was a convicted felon. The district court instructed the jury that, if it found beyond a reasonable doubt that Jones committed the acts charged in the indictment, it could consider his past similar acts for the limited purposes outlined in Rule 404(b), including whether Jones "had the state of mind or intent necessary to commit the crime charged in the indictment." "Extrinsic evidence has high probative value when intent is the key issue at trial." *Juarez*, 866 F.3d at 627.

Jones argues that the government's need for this evidence was minimal because his "theory of defense was not based on an argument that he was an ignorant participant in the alleged events." Yet, in its order denying Jones's

post-trial motion, the district court explained that Jones placed his intent at issue by arguing that he lacked intent to engage in a drug conspiracy and may have been meeting Cruz-Ortiz to obtain drugs for his personal use. *See United States v. Jimenez-Elvirez*, 862 F.3d 527, 536–37 (5th Cir. 2017). Jones does not address this finding by the district court. Notably, Jones's closing argument highlighted the district court's instruction to the jury that mere presence at the scene of an event or association with certain other persons is insufficient to prove a conspiracy. Further, the record does not indicate that Jones "offered any kind of 'enforceable pre-trial assurances' or any stipulation or concession regarding his intent." *United States v. Carrillo*, 660 F.3d 914, 929 n.6 (5th Cir. 2011) (citing *United States v. McCall*, 553 F.3d 821, 828 (5th Cir. 2008)). The government therefore needed to prove Jones's intent at trial.

We are also satisfied that the district court properly weighed the other three relevant factors. Jones's past methamphetamine conspiracy conviction is identical to one of the offenses charged in this case. We have observed that "[s]imilarity between the prior and charged offenses increases both the probative value and prejudicial effect of extrinsic evidence" and requires the district court to "assess the similarity of the offenses and weigh enhanced probative value against the prejudice that almost certainly results when evidence of prior misconduct is admitted." *Juarez*, 866 F.3d at 628 (quotations omitted); *see also Jimenez-Elvirez*, 862 F.3d at 536. Jones does not argue, however, that his past conviction is *too similar* to the offenses charged here. Instead, both on appeal and before the district court, Jones attempted to distinguish his past criminal conduct as dissimilar from the conduct alleged in this case. Yet minor factual differences between Jones's past offense and the conduct alleged here do not render his past conviction non-probative.

Further, although Jones's prior conviction was seven years old, he was released from prison less than two years before his May 3, 2017, arrest and

No. 18-50086

was still on supervised release for that conviction. His conviction was not too remote in time to be probative. *See United States v. Arnold*, 467 F.3d 880, 885 (5th Cir. 2006) (affirming use of past conviction that was nine years old). Finally, and critically, the district court gave the jury an appropriate limiting instruction. *See Wallace*, 759 F.3d at 495. The government did not urge the jury to disregard its instructions or consider the evidence for an improper purpose.[3]

"Even if all four factors weigh in the Government's favor, we must still evaluate the district court's decision under a 'commonsense assessment of all the circumstances surrounding the extrinsic offense.'" *Juarez*, 866 F.3d at 629 (quoting *Beechum*, 582 F.2d at 914). Here, Jones's judgment of conviction was admissible to prove an element of one of his charged offenses. The additional prejudicial effect of permitting the jury to consider Jones's prior conviction to help determine his intent was therefore diminished. Moreover, Jones's past conviction was "not of a heinous or violent nature" and "was unlikely to incite the jury to convict purely based on its emotional impact." *Id.* at 630. Evidence of his past conviction was not "greater in magnitude than the crimes for which [Jones] was on trial, nor did [it] occupy more of the jury's time than the evidence of the charged offenses." *United States v. Hernandez-Guevara*, 162 F.3d 863, 872 (5th Cir. 1998).

Contrary to Jones's arguments, affirming the use of his prior conviction in this case "does not render all prior narcotics convictions per se admissible in a drug conspiracy case." *Wallace*, 759 F.3d at 494; *see also Carrillo*, 660 F.3d at 929. We hold only that, under the specific circumstances of Jones's trial, the

---

[3] As explained below, the government did elicit testimony that it was common for drug dealers to carry guns. But this testimony did not rely on Jones's past drug conviction. Rather, it was consistent with the government's theory that Jones possessed the pistol while purchasing methamphetamine on May 3, 2017.

No. 18-50086

district court did not abuse its discretion in balancing the relevant factors and finding the evidence relevant and admissible.

## III.

We turn next to Jones's challenge under the Confrontation Clause. The Sixth Amendment provides a criminal defendant with the right "to be confronted with the witnesses against him." U.S. Const. Amend. VI. "[T]his bedrock procedural guarantee" protects against convictions based on out-of-court accusations that the defendant cannot test "in the crucible of cross-examination." *Crawford v. Washington*, 541 U.S. 36, 42, 61 (2004). To satisfy the Confrontation Clause, "[t]estimonial statements of witnesses absent from trial" may be "admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59. We review preserved claims of Confrontation Clause error *de novo*, subject to harmless error analysis. *See United States v. Kizzee*, 877 F.3d 650, 656 (5th Cir. 2017).

## A.

Prior to and during trial, Jones made multiple objections to the government's use of information from its confidential informant. We focus our Confrontation Clause analysis on the following series of exchanges with Agent Clayborne. The first occurred on direct examination:

Prosecutor: [B]ased on the information you'd received, Coy Jones had received a large amount of methamphetamine?

Defense: Objection. Hearsay.

Prosecutor: I'll withdraw the question.

The Court: That objection is overruled.

Prosecutor: I'll withdraw the question, your Honor.

11

No. 18-50086

The Court: All right.

Prosecutor: Why did you follow Coy Jones as opposed to the other guy?

Agent Clayborne: Well, we knew that Coy Jones had just received a large amount of methamphetamine.

Prosecutor: And once you knew that he had received that methamphetamine, what did you do?

Agent Clayborne: We were coordinating a traffic stop of the vehicle driven by Coy Jones, which is the white truck.

Prosecutor: And why did you want to stop that vehicle?

Agent Clayborne: Because it had methamphetamine, we wanted to seize it and arrest Coy Jones.

On cross-examination, defense counsel questioned Agent Clayborne regarding his asserted knowledge that Jones had received methamphetamine:

Defense: [Y]ou didn't see any interaction between Mr. Jones and the silver truck, right?

Agent Clayborne: That's correct.

Defense: But you testified that you knew Jones had received a large amount of methamphetamine.

Agent Clayborne: That's correct.

Defense: But you didn't know that, right? You hadn't seen anything. You hadn't seen an exchange of methamphetamine or money.

Agent Clayborne: But I knew it was.

Defense: You believed it, but you didn't know it.

Agent Clayborne: I knew it. I mean, if you're asking me, I knew it.

No. 18-50086

Defense counsel then moved on to other questions. On re-direct examination, the government returned to the subject of Agent Clayborne's knowledge of Jones's methamphetamine possession:

> Prosecutor: [Defense counsel] also asked you, let me characterize this, sort of confronted you about when you said you knew a drug deal had gone down, but you had not seen anything. Do you recall that?
>
> Agent Clayborne: That's correct.
>
> Prosecutor: How did you know that a drug deal had, in fact, occurred?
>
> Agent Clayborne: So once we saw or the other units saw what looked like a drug deal, *I made a phone call to my confidential source, who then made some phone calls himself and got back to me that the deal had happened.* (emphasis added).
>
> Prosecutor: Based on that information, you decided to stop Coy Jones?
>
> Agent Clayborne: That's correct.

Defense counsel asked to approach the bench and renewed the motion for disclosure of the confidential informant. Counsel argued that Agent Clayborne testified about the content of what the informant said and that Jones had the right to confront the witnesses against him. The district court stated that the testimony regarding the confidential informant came in response to defense questions on cross-examination and that the defense opened the door to the testimony. The court also denied Jones's renewed motion to turn over reports on the confidential informant.

## B.

"Police officers cannot, through their trial testimony, refer to the substance of statements given to them by nontestifying witnesses in the course

of their investigation, when those statements inculpate the defendant." *Taylor v. Cain*, 545 F.3d 327, 335 (5th Cir. 2008). An officer's testimony need not repeat the absent witness's exact statement to implicate the Confrontation Clause. Rather, "[w]here an officer's testimony leads to the clear and logical inference that out-of-court declarants believed and said that the defendant was guilty of the crime charged, Confrontation Clause protections are triggered." *Kizzee*, 877 F.3d at 657 (quotation omitted).

Agent Clayborne testified that he *knew* that Jones had received a large amount of methamphetamine because of what the confidential informant told him he heard from others. The jury was not required to make any logical inferences, clear or otherwise, to link the informant's statement (double hearsay) to Jones's guilt of the charged offense of methamphetamine possession. The government reinforced this connection during both opening and closing statements. In opening remarks, the prosecutor described the May 3, 2017, surveillance and stated: "Of course, the information the agents have at this point is that Coy Jones is now in possession of a large amount of methamphetamine, so they follow Coy Jones." In closing arguments, the prosecutor told the jury:

> And then, as you heard from Agent Clayborne when the defense asked him, how do you know the drug deal happened? Well, the informant told me. We called the informant and said, did the deal happen and he said, yep, it sure did. And that's why they chose to follow Coy Jones because they knew he had the drugs.

In light of this testimony and argument, we differ with the government's assertion that the informant's statements did not directly identify Jones. Both Agent Clayborne and the prosecution "blatantly link[ed]" Jones to the drug deal and "eliminated all doubt" as to who the informant was referring to. *Gray v. Maryland*, 523 U.S. 185, 193–94 (1998).

14

The government does not dispute that the confidential informant's statements regarding the drug deal are inadmissible under the Confrontation Clause as substantive evidence of Jones's guilt. It argues instead that the informant's statements were not introduced for their truth, but simply to explain the actions of law enforcement officers. The district court instructed the jury that testimony regarding the confidential informant "was admitted only to explain why law enforcement was conducting various surveillance operations," and could not be used "as evidence the defendant, or anyone else, actually engaged in a drug transaction."

Testifying officers may refer to out-of-court statements to "provide context for their investigation or explain 'background' facts," so long as the "out-of-court statements are not offered for the truth of the matter asserted therein, but instead for another purpose: to explain the officer's actions." *Kizzee*, 877 F.3d at 659. We have made clear that "[w]hen such evidence comes into play, the prosecution must be circumspect in its use, and the trial court must be vigilant in preventing its abuse." *United States v. Evans*, 950 F.2d 187, 191 (5th Cir. 1991); *see also United States v. Sosa*, 897 F.3d 615, 623 (5th Cir. 2018) ("[C]ourts must be vigilant in ensuring that these attempts to 'explain the officer's actions' with out-of-court statements do not allow the backdoor introduction of highly inculpatory statements that the jury may also consider for their truth.") (quoting *Kizzee*, 877 F.3d at 659).

Such vigilance is necessary to preserve the core guarantees of the Confrontation Clause. A witness's statement to police that the defendant is guilty of the crime charged is highly likely to influence the direction of a criminal investigation. But a police officer cannot repeat such out-of-court accusations at trial, even if helpful to explain why the defendant became a suspect or how the officer was able to obtain a search warrant. *See Kizzee*, 877 F.3d at 659–60 (holding that a detective's testimony that he was able to obtain

a search warrant for the defendant's house after questioning a witness about drug purchases violated the Confrontation Clause); *Taylor*, 545 F.3d at 331, 336 (finding a violation of clearly established law when an officer testified that he was able to develop a suspect after an unnamed individual told him "that the perpetrator was Bruce"); *United States v. Hernandez*, 750 F.2d 1256, 1257 (5th Cir. 1985) (rejecting argument that hearsay evidence identifying the defendant as a drug smuggler was permissibly used "to explain the motivation behind DEA's investigation").

"Statements exceeding the limited need to explain an officer's actions can violate the Sixth Amendment—where a nontestifying witness specifically links a defendant to the crime, testimony becomes inadmissible hearsay." *Kizzee*, 877 F.3d at 659; *see also United States v. Vitale*, 596 F.2d 688, 689 (5th Cir. 1979) (explaining that testimony regarding a tip is permissible "provided that it is simply background information showing the police officers did not act without reason and, in addition, that it does not point specifically to the defendant"). Because Agent Clayborne's testimony about his conversation with the confidential informant "point[ed] directly at the defendant and his guilt in the crime charged," it was not a permissible use of tipster evidence. *Evans*, 950 F.2d at 191.

For the same reason, the court's limiting instruction to the jury was insufficient to cure the Confrontation Clause error. Although jurors are ordinarily expected to follow their instructions, some statements are so "powerfully incriminating" that they are not cured by jury instructions. *Bruton v. United States*, 391 U.S. 123, 135 (1968). "[A] non-testifying witness's out-of-court statement, including a co-defendant's confession, that facially incriminates a defendant violates the defendant's Sixth Amendment right to confrontation, even when the jury is instructed not to consider the prior statements as evidence against the defendant." *United States v. Harper*, 527

No. 18-50086

F.3d 396, 403 (5th Cir. 2008). That is precisely what happened here. Thus, the introduction at trial of the confidential informant's statement that a drug deal involving Jones occurred on May 3, 2017, violated the Confrontation Clause.[4]

## C.

The government contends that, to the extent its use of the confidential informant's statements exceeded permissible non-hearsay purposes, Jones invited the error. This argument falls short for two independent reasons. First, defense counsel did not ask Agent Clayborne *how* he knew that Jones had received the methamphetamine, and thus did not invite him to answer that question. Rather, the defense simply pointed out an inconsistency between Agent Clayborne's testimony that he did not observe a drug transaction and his confident assertion that he knew Jones had received the drugs. "We narrowly construe counsel's statements in applying the invited error doctrine." *United States v. Franklin*, 838 F.3d 564, 567 n.1 (5th Cir. 2016). In this case it was the prosecution, not the defense, that elicited the hearsay testimony by asking Agent Clayborne how he knew that the drug deal had occurred. *Cf. United States v. Jimenez*, 509 F.3d 682, 691 (5th Cir. 2007) (finding invited error when the challenged "testimony was first elicited by Contreras' own attorney on cross-examination after he repeatedly asked Delauney to explain the basis for his suspicions about Contreras"). The government has pointed to no authority suggesting that the defense raising general doubts on cross-examination about the basis of an officer's knowledge permits the prosecution to directly elicit incriminating hearsay testimony on re-direct examination.

---

[4]    In light of this holding, as well as less-developed briefing, we do not reach Jones's argument that other references to the confidential informant at trial also violated the Confrontation Clause. Instead, to the extent the district court may need to revisit these issues at a new trial, we reiterate our earlier admonitions that tipster evidence "exceeding the limited need to explain an officer's actions can violate the Sixth Amendment," *Kizzee*, 877 F.3d at 659, and "the prosecution must be circumspect in its use." *Evans*, 950 F.2d at 191.

17

No. 18-50086

Second, it is undisputed that defense counsel was not informed before trial that the confidential informant provided law enforcement with after-the-fact information that the drug deal went through. For invited error to permit "waiver of the Sixth Amendment right to confrontation, a purposeful rather than inadvertent inquiry into the forbidden matter must be shown." *United States v. Taylor*, 508 F.2d 761, 764 (5th Cir. 1975); *see also United States v. Salazar*, 751 F.3d 326, 332 (5th Cir. 2014) ("Invited error applies, however, only where the error can be attributed to the actions of the defense."). The Sixth Amendment guarantees defendants the right to confront all accusers, whether present or absent at trial. *See Crawford*, 541 U.S. at 50–51. A defendant may cross-examine the government's witnesses and probe seeming inconsistencies without risking the unwitting admission of incriminating hearsay. *See Taylor*, 508 F.2d at 764 (finding no invited error when defense counsel "had no way to know that asking about the sawed-off rifle would lead the witness into the [challenged] statement"). To hold otherwise would eviscerate the protections of the Confrontation Clause by forcing defendants to choose between their right to vigorously cross-examine testifying witnesses and their right to confront out-of-court accusers.

## D.

We may nonetheless affirm Jones's conviction if the Confrontation Clause error was harmless beyond a reasonable doubt. *See United States v. Alvarado-Valdez*, 521 F.3d 337, 341 (5th Cir. 2008); *Chapman v. California*, 386 U.S. 18, 24 (1967). To meet this standard, the government bears the burden to show that there was "no reasonable possibility that the tainted evidence might have contributed to the jury's verdict of guilty." *Lowery v. Collins*, 988 F.2d 1364, 1373 (5th Cir. 1993). Here, the government points to other evidence of guilt, including surveillance of apparent drug transactions and Jones's flight from police, and argues that the confidential informant's

18

testimony "was not crucial" to its case. This is insufficient to satisfy the government's burden.

Our harmlessness inquiry focuses "on the evidence that violated [Jones's] confrontation right, not the sufficiency of the evidence remaining after excision of the tainted evidence." *Id.*; *see also United States v. Dominguez Benitez*, 542 U.S. 74, 81 n.7 (2004) ("When the Government has the burden of addressing prejudice, as in excusing preserved error as harmless on direct review of the criminal conviction, it is not enough to negate an effect on the outcome of the case."); *Alvarado-Valdez*, 521 F.3d at 342 ("Our focus is on the possibility of harm arising from [the] testimony and not necessarily on the possibility of its relationship to other evidence.").[5] Here, the inadmissible evidence was highly incriminating. Jones was charged, among other counts, with possession with the intent to distribute methamphetamine. He denied possessing the drugs. No drugs were found in his possession and no officer witnessed a drug transaction on May 3, 2017. The informant's statement, revealed through Agent Clayborne's testimony and emphasized during closing arguments, directly implicated Jones in methamphetamine possession.

We have repeatedly found harmful error under similar circumstances. *See Kizzee*, 877 F.3d at 662 (finding that Confrontation Clause error was not

---

[5]    Our harmless error cases have also considered factors such as "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case." *United States v. Duron-Caldera*, 737 F.3d 988, 996 (5th Cir. 2013) (quotation omitted). Yet we have also explained that these factors are primarily relevant in cases involving "Confrontation Clause violations arising from the denial of a defendant's right to impeach a witness for bias." *Alvarado-Valdez*, 521 F.3d at 342 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). This is not such a case. In any event, our cases have consistently recognized that the government must show "no reasonable possibility that the evidence complained of might have contributed to the conviction." *Kizzee*, 877 F.3d at 661 (quotation omitted); *see also Duron-Caldera*, 737 F.3d at 996.

harmless when testimony was referenced in closing arguments and "no other witness in this case could provide testimony from personal knowledge that Kizzee sold drugs"); *Duron-Caldera*, 737 F.3d at 996–97 (noting that the contested affidavit undermined the defendant's "sole defense," and the government relied on it in closing arguments); *Taylor*, 545 F.3d at 337 (holding that Confrontation Clause error was not harmless "[i]n light of the dependency of the prosecution on a single witness's less-than-certain identification, combined with the use of tainted hearsay evidence both in testimony and in closing argument asserting that the defendant was the 'perpetrator'"); *Alvarado-Valdez*, 521 F.3d at 342–43 ("We cannot see how the government can conclusively show that the tainted evidence did not contribute to the conviction, because the government's closing argument relied on that very evidence.").

Our recent decision in *United States v. Sarli*, 913 F.3d 491 (5th Cir. 2019), is not to the contrary. In *Sarli*, the defendant was arrested with a large amount of methamphetamine. *Id.* at 493. A detective testified that law enforcement arrested Sarli following a tip from a confidential informant, and the prosecution mentioned this tip briefly in opening and closing arguments. *Id.* at 498. Critically, "Sarli did not dispute that he carried drugs—but he did dispute that he *knew* he was carrying drugs." *Id.* at 497. We determined that references to the confidential informant's tip were harmless because "nothing in the confidential tip established whether Sarli was a knowing participant or an ignorant, gullible mule—and the prosecutor did not once suggest otherwise." *Id.* at 499. Here, by contrast, the informant's purported confirmation that a drug deal occurred directly inculpated Jones in the contested element of possession.

It is possible that the jury concluded that Jones possessed a large amount of methamphetamine based only on his meetings with Cruz-Ortiz, his highly

suspicious conduct on May 3, 2017, and the improbability that the methamphetamine and pistol would be randomly discovered on the side of the road. But it is also possible that any doubts about Jones's guilt were dispelled by Agent Clayborne's testimony, emphasized during closing arguments, that he knew Jones possessed methamphetamine because of the information he received from the confidential informant. "Under these circumstances, there is no way to determine whether the jury would have convicted the defendant purely on the basis of the tainted testimony or of any of the other evidence." *United States v. Jackson*, 636 F.3d 687, 697 (5th Cir. 2011) (quotation omitted). "That would require retrying the case on appeal, at best, or engaging in pure speculation, at worst." *Alvarado-Valdez*, 521 F.3d at 343.

The government has therefore failed to meet its burden to show harmless error as to Jones's conviction for possession with intent to distribute 500 grams or more of methamphetamine. Two other counts of conviction—conspiracy to possess with intent to distribute 500 grams or more of methamphetamine and possession of a firearm in furtherance of a drug trafficking crime—are closely linked to Jones's alleged methamphetamine purchases and must similarly be reversed. Jones's remaining count of conviction—possession of a firearm by a convicted felon—does not directly relate to methamphetamine possession or distribution. Yet, as the government itself argued in its briefing and at oral argument, the evidence of gun possession is deeply intertwined with Jones's alleged methamphetamine dealing. The government elicited testimony at trial that it is common for drug dealers to carry guns to protect themselves and their product. On appeal, the government contends that Jones's involvement in drug trafficking supports an inference that he possessed the discarded pistol. The government has offered no argument that Jones's felon-in-possession

21

No. 18-50086

conviction can survive the reversal of his other counts of conviction.[6] Under these circumstances, we cannot say that there is no "reasonable possibility that the evidence complained of might have contributed to the conviction" for firearm possession. *Chapman*, 386 U.S. at 24. We thus vacate the judgment of conviction on all counts and remand for a new trial.

IV.

Jones also appeals the denial of his motion to disclose the identity of the confidential informant. We review a district court's decision to deny disclosure of an informant's identity for abuse of discretion. *United States v. Ibarra*, 493 F.3d 526, 531 (5th Cir. 2007). There is "no fixed rule" in this area because "[t]he problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro v. United States*, 353 U.S. 53, 62 (1957). "We apply a three factor test to determine whether the identity of a confidential informant should be disclosed: '(1) the level of the informant's activity; (2) the helpfulness of the disclosure to the asserted defense; and (3) the Government's interest in nondisclosure.'" *United States v. Ortega*, 854 F.3d 818, 824 (5th Cir. 2017) (quoting *Ibarra*, 493 F.3d at 531).

In response to Jones's request for disclosure, the government represented that the informant "just gave a tip," "was not on the scene on any of this that will be the subject of trial," and "would not be a fact witness." The district court held an *ex parte* hearing with the government and subsequently denied Jones's motion for disclosure of the confidential informant, citing safety concerns and the government's long relationship with the informant. We have affirmed the denial of a request for disclosure when the confidential informant

---

[6]    Indeed, the government candidly acknowledged at oral argument that it could be more difficult to establish harmlessness as to the firearm counts than as to the methamphetamine counts.

"was a mere tipster," the informant did not provide information that would aid the defense, and disclosure posed risks to the safety of the informant and his family and could jeopardize other ongoing investigations. *Ibarra*, 493 F.3d at 532.

Upon review of the transcript of the *ex parte* hearing, we concur in the district court's assessment that disclosure of the informant's identity could be dangerous for the informant and his family. It is not clear from the record, however, whether the district court fully considered the level of the informant's involvement in the contested conduct and the potential helpfulness of disclosure to Jones's defense. These factors are closely tied to our Confrontation Clause analysis. As explained above, the government's use of the confidential informant at Jones's trial exceeded the scope of a "mere tipster." The government instead elicited testimony that the confidential informant confirmed facts central to its case—that a drug deal occurred on May 3, 2017, and that Jones received a large amount of methamphetamine in that transaction.

Jones argues that disclosure of the informant's identity would have been helpful to his defense because the informant could have been cross-examined regarding the benefits he received in exchange for assisting law enforcement as well as his own criminal history. This information was discussed during the district court's *ex parte* hearing with the government but was not disclosed to Jones before trial.[7] The value of impeachment evidence depends on how a witness is used at trial and whether the witness's credibility is a relevant issue in the case. *See, e.g., Giglio v. United States*, 405 U.S. 150, 154–55 (1972). Here, the government relied on the confidential informant's representation that a

---

[7]     Jones has not raised, and we do not address, whether the government had a separate obligation to disclose impeachment information to the defense under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).

drug transaction was completed on May 3, 2017. Moreover, the government highlighted the trustworthiness of the confidential informant during closing arguments. The government noted that the informant had provided reliable information about Cruz-Ortiz on multiple occasions and that law enforcement officers were "able to confirm what they're being told by their informant, based on the information he gives them." The government also emphasized that the informant was providing information about Cruz-Ortiz, not Jones, and "[i]t's not like the CI is trying to frame up Coy Jones." Under these circumstances, an opportunity to challenge the informant's motivations and credibility could have been helpful to the defense.

Given our holding on Jones's Confrontation Clause challenge, we expect the government to make different use of the confidential informant at any new trial. We thus remand to the district court to reconsider Jones's motion for disclosure in connection with a new trial.

V.

Jones further argues that, without the confidential informant's impermissible statements, there is not enough admissible evidence in the record to support his convictions. "In reviewing the sufficiency of the evidence, we view the evidence and the inferences drawn therefrom in the light most favorable to the verdict, and we determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Mitchell*, 484 F.3d 762, 768 (5th Cir. 2007). The record reflects that the evidence was legally sufficient to support Jones's convictions. The government offered substantial evidence that Cruz-Ortiz was involved in methamphetamine distribution and that Jones had multiple meetings with Cruz-Ortiz that resembled drug purchases. This evidence—combined with Jones's high-speed flight from the sheriff's deputy, his false statements to police after his arrest, and the discovery of a pistol and nearly a kilogram of

No. 18-50086

methamphetamine on the part of the road where Jones passed out of view—could lead a reasonable jury to find Jones guilty beyond a reasonable doubt of the offenses charged. Accordingly, we remand for a new trial rather than for entry of a judgment of acquittal. *See Jackson*, 636 F.3d at 697–98.

## VI.

Finally, Jones appeals the revocation of his supervised release. The district court found that Jones violated his supervised release because of his conviction in the jury trial. The court also found that this was a Grade A violation as a matter of law. The government argues that, even if we set aside Jones's new conviction, the district court had enough information to justify revoking Jones's supervised release based on a preponderance of the evidence presented at trial. Although this may be true, the district court made no independent factual findings as to Jones's underlying criminal conduct and did not provide any alternative grounds to justify revoking Jones's supervised release. We therefore vacate and remand to the district court to reconsider whether to revoke Jones's supervised release and, if so, what sentence to impose. *See United States v. Jones*, 484 F.3d 783, 793 (5th Cir. 2007).

## VII.

The judgment of conviction is VACATED on all counts and this matter is REMANDED for further proceedings consistent with this opinion. The judgment of revocation is also VACATED and REMANDED.