

IN THE

# Indiana Supreme Court

Supreme Court Case No. 25S-CR-349



FILED

Dec 17 2025, 2:40 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

## Ricky L. Taylor,
*Appellant*

–v–

## State of Indiana,
*Appellee*

---

Argued: October 9, 2025 | Decided: December 17, 2025

Appeal from the Delaware Circuit Court
No. 18C04-2311-F1-16
The Honorable John M. Feick, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-CR-2107

---

**Opinion by Chief Justice Rush**

Justices Goff and Molter concur.
Justices Massa and Slaughter dissent, believing transfer should be denied and
the Court of Appeals' decision reinstated.

**Rush, Chief Justice.**

The Sixth Amendment's Confrontation Clause reflects the Framers' conviction that a criminal defendant should not be found guilty based on the untested words of an absent witness. Instead, a defendant must have the opportunity to personally question a witness to probe their recollection, test their reliability, expose their bias, and draw out favorable facts through cross-examination. When a trial court denies a defendant this constitutional right, the error requires reversal unless the State proves it was harmless beyond a reasonable doubt.

Here, a defendant was charged with supplying a drug dealer with pills that tragically killed a seventeen-year-old. During a bench trial, the court admitted—over objection and without an opportunity for cross-examination—the dealer's statement to police naming the defendant as the supplier of the fatal pills, and the defendant was found guilty. On appeal, the State concedes that the defendant's constitutional right to confront the dealer was violated. And because the State has not shown that the error in admitting the inculpatory statement was harmless beyond a reasonable doubt, we vacate the defendant's challenged conviction and remand for a new trial on that charge.

## Facts and Procedural History

In 2023, Ricky Taylor was living in Muncie and selling blue pills known as M30s, which are counterfeit oxycodone pills that typically contain fentanyl. Taylor regularly sold M30s to Jaxon Engle, who both used them and sold them to others. But Engle also bought M30s from other suppliers, including Matt Sheets.

On the evening of September 11, Taylor told Engle on Facebook that he had "good ones" for sale. But Taylor became irritated by Engle's follow-up questions about the pills, including whether they were the "[s]ame ones" Sheets had. Three days later, on September 14, Taylor ended the exchange, telling Engle to "[e]ither buy them or don't." Taylor then stopped responding.

The next day, Engle visited a local drag-racing strip. Once there, according to a statement Engle later made to police, he sold "blue pills" he had obtained from Taylor to seventeen-year-old K.L. That night, K.L. tragically died from fentanyl and cocaine intoxication. When he was found, police recovered part of an M30 pill from his nightstand, which lab testing later confirmed contained fentanyl. The ensuing investigation led police to Taylor, who stated he did not think he had sold Engle pills on September 14, though he could not say for sure. Officers also obtained Facebook messages that Taylor and Sheets exchanged in which they discussed joint drug deals in the days following K.L.'s death.

The State ultimately charged Taylor with four offenses, including a Level 1 felony for aiding, inducing, or causing Engle to commit the offense of dealing in a controlled substance resulting in K.L.'s death and two Level 5 felonies for dealing a narcotic drug and for conspiracy to deal a narcotic drug. For the aiding charge, the State alleged Taylor was the "distributor or supplier" of the fatal pills Engle had sold to K.L. And because the State planned to call Engle as a witness, it offered him immunity in exchange for his testimony about Taylor's role.

But just a few days before trial, Engle changed his story, informing the State that Sheets—not Taylor—had sold him M30s "approximately one hour" before he went to the drag-racing strip where he sold the pills to K.L. As a result, the State withdrew its immunity offer to Engle and decided not to call him to testify against Taylor. And Engle made clear that, if called, he would assert his right against self-incrimination.

During Taylor's bench trial, Officer Steve Coffman testified—over objection—that Engle had told police months earlier that Taylor had supplied him with the "blue pills" he sold to K.L. Ultimately, the court found Taylor guilty of the Level 1 felony aiding count and the two Level 5 felony counts. It then imposed a thirty-five-year sentence on the aiding conviction, six years concurrently on the dealing conviction, and six years consecutively on the conspiracy charge—for an aggregate forty-one-year executed sentence.

On appeal, Taylor challenged only his Level 1 felony conviction, asserting that the admission of Engle's out-of-court statement violated his

Sixth Amendment right to confront and cross-examine Engle.[1] The State conceded the constitutional violation but contended the error was harmless beyond a reasonable doubt. The Court of Appeals agreed and affirmed. *Taylor v. State*, No. 24A-CR-2107, at *8 (Ind. Ct. App. Mar. 14, 2025) (mem.).

Taylor petitioned for transfer, which we now grant, vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).

## Discussion and Decision

The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees criminal defendants "the right . . . to be confronted with the witnesses against" them. U.S. Const. amend. VI. The core purpose of this right "is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). That "testing in the crucible of cross-examination" remains the most reliable means of probing a witness's credibility and uncovering the truth. *Crawford v. Washington*, 541 U.S. 36, 61–62 (2004). For these reasons, out-of-court testimonial statements cannot be used against a defendant at trial "unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." *Bullcoming v. New Mexico*, 564 U.S. 647, 657 (2011).

Here, the State concedes that Engle's statement to police identifying Taylor as the supplier of the pills that caused K.L.'s death was testimonial, that Engle was unavailable, and that Taylor had no prior opportunity to cross-examine him. But while both parties agree that admitting Engle's

---

[1] Taylor also argued on appeal that the admission violated his right to confront his accuser under Article 1, Section 13 of the Indiana Constitution. But because he provided no independent analysis under that provision, the issue is waived. *See Haviland v. State*, 677 N.E.2d 509, 513 n.2 (Ind. 1997). We encourage attorneys to embrace our state constitution's "uniqueness" and advance separate arguments for "independent analysis" of its protections. *Wright v. State*, 108 N.E.3d 307, 315 (Ind. 2018).

statement violated Taylor's constitutional right to confrontation, they disagree on whether reversal is required.

Constitutional errors of this kind require reversal unless "the State can show beyond a reasonable doubt that the error did not contribute to the verdict." *Koenig v. State*, 933 N.E.2d 1271, 1273 (Ind. 2010). In this case, the State offered Engle's statement through Officer Coffman to prove that Taylor knowingly aided, induced, or caused Engle to deliver the M30 pills that led to K.L.'s death. *See* Ind. Code §§ 35-41-2-4, -42-1-1.5(a)(1). Taylor maintains the trial court's erroneous admission of that statement was not harmless beyond a reasonable doubt because it was "the sole direct evidence" tying Taylor to the fatal pills. But the State counters that this connection was established through other, properly admitted evidence.

To determine whether the State met its burden, we consider several factors: the significance of the improperly admitted evidence to the State's case; whether that evidence was merely cumulative; whether it was corroborated or contradicted by other evidence; and the extent of cross-examination or questioning on the improperly admitted evidence. *Koenig*, 933 N.E.2d at 1273. Analyzing those factors here, we hold that the State has not shown beyond a reasonable doubt that Engle's improperly admitted statement did not contribute to the challenged verdict.

We begin by evaluating the significance of Engle's statement to Officer Coffman identifying Taylor as the source of the "blue pills" later sold to K.L. That statement was direct evidence of Taylor's guilt because it was based on Engle's "personal knowledge" and, if true, proved Taylor's involvement "without inference or presumption." *Hampton v. State*, 961 N.E.2d 480, 489 (Ind. 2012) (quoting *Direct Evidence*, Black's Law Dictionary (9th ed. 2009)). Thus, Engle's statement was critical to the State proving Taylor's challenged conviction.

That statement was also far from cumulative, as it was the only **direct** evidence linking Taylor to the specific pills that killed K.L. The State underscored this point during closing argument, emphasizing that Engle's statement established that Taylor supplied the fatal pills. All other evidence suggesting Taylor's role was circumstantial—the kind of evidence "based on inference and not on personal knowledge or

observation." *Id.* (quoting same). And though such evidence can support a conviction on its own, *Young v. State*, 198 N.E.3d 1172, 1176 (Ind. 2022), we have long recognized the "qualitative difference between direct and circumstantial evidence with respect to the degree of reliability and certainty they provide as proof of guilt," *Hampton*, 961 N.E.2d at 486.

Moreover, the circumstantial evidence did not corroborate Engle's statement that Taylor supplied the pills that caused K.L.'s death. To be sure, the State presented evidence showing that Taylor sold M30s to Engle in the months leading up to K.L.'s death and that the two discussed a possible sale on Facebook the day before Engle sold the pills to K.L. But this evidence did not establish that a sale occurred at that time. Instead, the Facebook exchange ended after Engle repeatedly questioned Taylor about the pills, and—unlike in prior dealings—Taylor never told Engle where to meet for an exchange. Additionally, Engle's father, who had taken his son to purchase drugs, told police that Engle had multiple suppliers of M30s, including Sheets. Testimony from Engle's brother's ex-girlfriend and Engle's Facebook messages corroborated this account. And while Facebook messages between Taylor and Sheets referenced arranging drug deals together, those messages began after K.L.'s death and did not indicate—as the State argued at trial—that Taylor and Sheets acted as "partners" in selling the fatal pills to Engle. Hence, the circumstantial evidence suggested someone other than Taylor could have been responsible. So, Engle's statement stood alone as significant, non-cumulative, uncorroborated direct evidence that linked Taylor to the fatal pills. *Cf. United States v. Jones*, 930 F.3d 366, 379–81 (5th Cir. 2019) (reversing a conviction when an informant's statement, emphasized in closing argument, was the only direct evidence implicating the defendant in possession of drugs with intent to distribute).

What's more, Taylor was unable to effectively challenge the reliability of Engle's statement to Officer Coffman. Because neither Officer Coffman nor any other witness had personal knowledge of Engle's more recent recantation naming Sheets as the supplier of the fatal pills, Taylor had no opportunity to expose the inconsistencies through cross-examination. Nor could Taylor probe Engle's potential motive for initially identifying him as the supplier in exchange for immunity. *See Smith v. State*, 721 N.E.2d 213,

219 (Ind. 1999) (discussing the importance of cross-examination for demonstrating a witness's bias). Ultimately, Engle's inculpatory statement was never tested—the very harm the Confrontation Clause seeks to prevent.

All in all, Engle's improperly admitted statement identifying Taylor as the supplier of the fatal pills was vital to the State's case, non-cumulative, uncorroborated, and untested through cross-examination. We therefore cannot say beyond a reasonable doubt that Engle's incriminating statement did not contribute to the verdict on Taylor's challenged conviction.

## Conclusion

Because the State has not carried its burden to show that the constitutional error was harmless beyond a reasonable doubt, we vacate Taylor's Level 1 felony conviction and remand for a new trial on that charge.

Goff and Molter, JJ., concur.
Massa and Slaughter, JJ., dissent, believing transfer should be denied and the Court of Appeals' decision reinstated.

ATTORNEY FOR APPELLANT
Angelus T. Kocoshis
Muncie, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General

Kathy Bradley
Deputy Attorney General
Indianapolis, Indiana