# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 21, 2022

Lyle W. Cayce
Clerk

No. 21-30474

United States of America,

*Plaintiff—Appellee*,

*versus*

John Weldon; Eriston Wilson,

*Defendants—Appellants*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CR-34-1
USDC No. 2:19-CR-34-3

---

Before King, Duncan, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

John Weldon and Eriston Wilson appeal the convictions they received for their involvement in a series of armed robberies. Wilson also appeals his sentence. We vacate Wilson's sentence and remand for resentencing, and we affirm the district court's judgment in all other respects.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-30474

## I.

From December 23, 2018 to February 2, 2019, John Weldon, often in collaboration with Eriston Wilson, committed a string of robberies in New Orleans. Weldon first robbed a Shell gas station of money and Kool cigarettes. He and Wilson then committed armed robbery of a Dollar General, two additional Shell gas stations, a Circle H Meat Market ("Circle H"), a Tiger Mart, a Quik Save Discount Store ("Quik Save"), and a Mike's Grocery.

On February 5, 2019, Weldon and Eugene Lewis robbed First Bank and Trust. Lewis first cased the bank, acting as a potential customer to determine if security guards were present. He returned with Weldon several hours later, acting as a decoy to open the door before Weldon entered the bank brandishing a handgun. During the robbery, Weldon took over $9,000, and Lewis left the bank and waited for Weldon at a Shell station across the street.

Law enforcement arrived at the scene shortly thereafter and arrested Lewis that day. Lewis explained to the officers that Weldon, whose name he did not know, had contacted Lewis on his mother's phone and that they had met only several days prior. Law enforcement retrieved Weldon's phone number, which they then used to obtain Weldon's name and photograph. Upon seeing Weldon's photograph, an officer immediately recognized Weldon's face tattoos as those belonging to the suspect in the robbery that took place on December 23.

After comparing the image of Weldon with that of the suspect from the December 23 robbery, as well as confirming that the vehicle at Weldon's listed address matched the vehicle associated with several of the seven two-person robberies, law enforcement obtained an arrest warrant for Weldon and a search warrant for his address. Agents also obtained a search warrant

for the vehicle thereafter. The warrants were executed, and several items were seized, including a substantial amount of cash, a black and silver firearm, and a box of Kool cigarettes.

Weldon possessed a cellphone when he was arrested, and agents subsequently obtained a search warrant for the device. The cellphone contained several pictures of Weldon and Wilson together, both of whom could be seen wearing the same clothing and shoes that were utilized in the string of robberies. Based on these pictures, as well as surveillance footage from the robberies and interviews with other individuals, law enforcement determined that Wilson was the second individual who committed the earlier robberies alongside Weldon. Wilson was eventually arrested in May 2019 in connection with a separate armed robbery not charged in this case.

In August 2019, Weldon, Wilson, and Lewis were charged in a superseding indictment. Weldon and Wilson were charged with conspiracy to commit Hobbs Act robbery at seven locations in violation of 18 U.S.C. Section 1951(a) ("Count One") and aiding and abetting the brandishing of a firearm during a crime of violence at the Circle H in violation of 18 U.S.C. Section 924(c)(1)(A)(ii) ("Count Three"). Weldon was additionally charged with Hobbs Act robbery at a Shell gas station on December 23, 2018, in violation of 18 U.S.C. Section 1951(a) ("Count Two"), armed bank robbery at First Bank and Trust in violation of 18 U.S.C. Sections 2113(a) and (d) ("Count Four"), aiding and abetting the brandishing of a firearm during a crime of violence at First Bank and Trust in violation of 18 U.S.C. Section 924(c)(1)(A)(ii) ("Count Five"), and knowingly possessing a firearm as a felon in violation of 18 U.S.C. Sections 922(g)(1) and 924(a)(2) ("Count

Six").[1] Following a four-day trial, the jury found Defendants guilty on all counts. Weldon was sentenced to a 408-month term, and Wilson was sentenced to a 272-month term. Defendants now appeal their convictions and sentences to this court.

## II.

### A. Sufficiency of the evidence

Defendants argue the Government presented insufficient evidence to support their convictions on all counts, though neither Defendant challenged the sufficiency of the evidence at trial. When a sufficiency claim is unpreserved, we review for plain error. *United States v. Smith*, 878 F.3d 498, 502–03 (5th Cir. 2017). To establish plain error, Defendants must show (1) "an error or defect" (2) that is "clear or obvious" and (3) "affected the [Defendants'] substantial rights." *Id.* at 503 (quoting *United States v. Delgado*, 672 F.3d 320, 329 (5th Cir. 2012) (en banc)). Defendants' claims "will be rejected unless the record is *devoid of evidence* pointing to guilt or if the evidence is so tenuous that a conviction is shocking." *Delgado*, 672 F.3d at 330–31 (quoting *United States v. Phillips*, 447 F.3d 215, 219 (5th Cir. 2007)).

The Hobbs Act (the "Act") makes it unlawful for a person to "in any way or degree obstruct[], delay[], or affect[] commerce or the movement of any article or commodity in commerce, by robbery." 18 U.S.C. § 1951(a). To satisfy the jurisdictional element of the Act, the Government must show that Defendants' unlawful activity caused a "minimal effect on interstate commerce." *United States v. Robinson*, 119 F.3d 1205, 1212 (5th Cir. 1997). "[A] generalized connection between the alleged criminal activity and interstate commerce is sufficient to sustain a conviction for *conspiracy* to

---

[1] Lewis was also charged with Counts Four and Five, for which he accepted a plea agreement and cooperated with the Government.

violate the Hobbs Act," while substantive Hobbs Act violations "require that the alleged act actually have an effect on interstate commerce." *United States v. Mann*, 493 F.3d 484, 495 (5th Cir. 2007).

Wilson argues the Government failed to show the Circle H robbery, which forms the basis for Count Three, had any effect on interstate commerce, and Weldon argues that the Government did not provide evidence that the theft of Kool cigarettes—merchandise stolen in a handful of the seven robberies at issue in Counts One and Two—implicated interstate commerce. However, witnesses testified that goods sold at each business, such as Frito-Lay products and Kool cigarettes, were manufactured outside Louisiana and thus required interstate commerce to arrive at the robbed stores. Kool cigarettes were stolen in five of the seven robberies underlying Count One, including in the robbery of the Shell gas station at issue in Count Two, and it is neither clear nor obvious that this evidence is insufficient to establish the minimal effect on interstate commerce the Act requires for those counts.

No Kool cigarettes were stolen from Circle H, but trial testimony confirmed that Circle H sold Coca-Cola and Frito-Lay products and that the robbery caused at least a minimal interruption in commerce. Specifically, there were customers present during the armed robbery of the store, and they were forced to lie on the ground during the robbery. This court has previously held that the interstate commerce element was satisfied for a substantive Hobbs Act conviction, such as Count Three, where a defendant's "armed robberies caused the interruption of commerce in several stores dealing in out-of-state wares." *United States v. Martinez*, 28 F.3d 444, 445 (5th Cir. 1994). Accordingly, it was not plain error to rely on such evidence to establish a generalized connection between the Circle H robbery and interstate commerce necessary for Count Three.

No. 21-30474

Defendants also challenge generally the sufficiency of the evidence for their convictions on the respective counts, arguing that nobody could positively identify them based on the surveillance footage (because the perpetrators were masked) and that the circumstantial evidence was weak. However, Defendants fail to show that the record is either devoid of evidence pointing to guilt or so thin that the convictions are shocking. *See Delgado*, 672 F.3d at 330–32.

Starting with Counts One and Three, Lewis testified that Weldon admitted to robbing Tiger Mart and that he had seen Weldon's black and silver firearm, which matched the description of the gun used in at least six of the seven robberies, including the robbery of Circle H. Moreover, the vehicle Weldon frequently used, a gold Honda, matched the vehicle seen at two of the seven robberies. Law enforcement also seized several items from the vehicle, including the firearm, Kool cigarettes, and shoes, that were connected to various robberies. Finally, cell site location information placed Weldon's phone near the Circle H and Quik Save at the time of the robberies. Taken together, this evidence is sufficient to convict Weldon on Counts One and Three.[2]

The Government also presented evidence showing that Wilson and the unarmed robber at the second Shell gas station robbery both had worn relatively distinctive yellow, black, and white shoes. Moreover, Wilson and Weldon are of the same height and build as the two robbers involved in the

---

[2] To find Weldon guilty under Count One, it was sufficient for the jury to find that he participated in one of the seven two-man robberies underlying the conspiracy. *See United States v. Veltre*, 591 F.2d 347, 350 (5th Cir. 1979) ("It is well settled that to make out the crime of conspiracy, once the unlawful agreement is shown, proof of a single overt act in furtherance of that agreement by a single conspirator establishes the guilt of each member of the conspiracy."). The same is true for Wilson. Accordingly, we need not review the evidence regarding each of the seven robberies.

conspiracy, and evidence showed they drove around together in the gold car, all of which support Wilson's conviction under Count One. With respect to Count Three, the Circle H robbery, the Government again established that Wilson's height and build match those of the unarmed robber and showed that the unarmed robber at the second Shell gas station robbery—Wilson—and the unarmed robber at Circle H wore consistent, and distinctive, Nautica sweatshirts. The jury was also able to compare surveillance footage from the robbery, which captured the robber's eyes and bridge of the nose, to Wilson's face in court and in photographs. This constellation of circumstantial evidence is sufficient to support the jury's verdict finding Wilson guilty on Counts One and Three given our plain-error review.

With respect to the first Shell gas station robbery, which forms the basis of Count Two, the Government provided evidence that Weldon and the perpetrator shared unique facial tattoos; the robber used a black and silver firearm that was consistent with the gun found in the vehicle of Weldon's girlfriend, which he admitted to possessing; and Weldon possessed clothing consistent with that of the perpetrator, all of which is sufficient evidence to convict him on Count Two.

Weldon's arguments regarding Counts Four and Five similarly fail. His convictions on these counts are supported by the testimony of his accomplice Lewis, the perpetrator's use of a black and silver firearm, the cell site location information placing his phone near First Bank and Trust at the time of the robbery, and Weldon's possession of boots consistent with those worn by the robber. Weldon's primary argument disputing his conviction under these counts is that Lewis is not a credible witness, but we have "long held that 'a defendant may be convicted on the uncorroborated testimony of a coconspirator who has accepted a plea bargain,' so long as the coconspirator's testimony is not 'incredible.'" *United States v. Perry*, 35 F.4th 293, 317 (5th Cir. 2022) (quoting *United States v. Villegas-Rodriguez*,

171 F.3d 224, 228 (5th Cir. 1999)). Lewis' testimony was not incredible—it was related to his interactions with Weldon before and during the bank robbery, which he necessarily observed. *See United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994) ("Testimony is incredible as a matter of law only if it relates to facts that the witness could not possibly have observed or to events which could not have occurred under the laws of nature."). Together, this evidence is sufficient to support Weldon's conviction on Counts Four and Five.

Lastly, Weldon argues his conviction on Count Six must fail because he did not commit any of the counts' underlying crimes. As we have explained, that is not the case—the evidence was sufficient to convict Weldon of the robberies where he brandished a firearm. Therefore, Weldon and Wilson were convicted on sufficient evidence on all counts.

## B. Rule 404(b) evidence

During the trial, the district court admitted officer testimony regarding Wilson's apprehension for a May 2019 New Orleans robbery as proof of Wilson's identity and intent with respect to the charged crimes. Wilson argues on appeal that evidence of this offense is not relevant to his identity or intent to commit Counts One and Three because the offense is not sufficiently similar to the charged crimes. He also contends that the undue prejudice substantially outweighs this evidence's negligible probative value.

Under Federal Rule of Evidence 404(b), evidence of other crimes, wrongs, or acts not at issue are admissible for non-character purposes, including for identity and intent. The admissibility of such an act "under Rule 404(b) hinges on whether (1) it is relevant to an issue other than the defendant's character, and (2) it 'possess[es] probative value that is not substantially outweighed by its undue prejudice.'" *United States v. Smith*,

804 F.3d 724, 735 (5th Cir. 2015) (alteration in original) (quoting *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc)). We review the district court's admission of such extrinsic evidence for an abuse of discretion, with a heightened standard in criminal cases. *Id.*

The May 2019 robbery is not relevant to Wilson's identity in the charged crimes, but it is relevant to his intent. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." *Beechum*, 582 F.2d at 911 (quoting Fed. R. Evid. 401).

We have previously held that a subsequent robbery "is not such an unusual crime that it tends to prove that one of the two individuals involved must have been the single bandit in a similar prior robbery" where the similarities are "common component[s] of armed bank robberies" and "the charged crime was perpetrated by a lone gunman, while the uncharged crime was committed by two armed men." *United States v. Myers*, 550 F.2d 1036, 1046 (5th Cir. 1977). So too here. The district court identified the following similarities between the charged crimes and the May 2019 robbery: the robbers wore gloves and face coverings; they were armed with handguns; they robbed convenience stores; currency was taken; there was a getaway vehicle; and the robbery occurred a little over three months after the last charged robbery. But these are common elements in armed robberies generally, and the temporal and geographical similarities bear little force in a city that experienced more than one thousand reported robberies in 2019 alone.[3] Moreover, Wilson was charged and convicted of a string of two-

---

[3] *See Crime in the United States 2019, Table 8: Louisiana*, Fed. Bureau Investigation, Crim. Just. Info. Servs. Div., https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019/tables/table-8/table-8-state-cuts/louisiana.xls (last visited Sept. 9, 2022).

person robberies, whereas the May 2019 robbery was committed by three or four people. Given this difference and the lack of distinct similarities, we find that the 404(b) evidence was not properly admitted for the purpose of establishing Wilson's identity.

By contrast, the May 2019 robbery is relevant to Wilson's intent. "Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind . . . ." *Beechum*, 582 F.2d at 911. "The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense." *Id.* Wilson argues that intent was not in dispute at trial because the evidence presented definitively proved that the two perpetrators committed the seven robberies in concert with each other. In other words, he claims that only his identity—whether he was one of the two robbers—is at issue. However, "[w]here, as here, a defendant enters a plea of not guilty in a conspiracy case, the first prong of the *Beechum* test is satisfied." *United States v. Cockrell*, 587 F.3d 674, 679 (5th Cir. 2009) (citing *United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996)).

We must now determine whether the district court abused its discretion by finding that the Rule 404(b) evidence's prejudice did not substantially outweigh its probative value. It did not. This court has articulated several factors it considers when evaluating the risk of prejudice from extrinsic evidence: "(1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions." *United States v. Kinchen*, 729 F.3d 466, 473 (5th Cir. 2013) (citing *United States v. Sanchez*, 988 F.2d 1384, 1394 & n.14 (5th Cir. 1993)).

No. 21-30474

The Government's need for the May 2019 robbery evidence to establish intent was not insubstantial—the Government had no other evidence to show Wilson's state of mind, or intent, and had to prove that Wilson knew the unlawful purpose of the conspiracy. And the prejudice of this evidence did not substantially outweigh its probative value. "[C]ritically, the district court gave the jury an appropriate limiting instruction," *United States v. Jones*, 930 F.3d 366, 374 (5th Cir. 2019), both contemporaneously and in its final instructions. "The government did not urge the jury to disregard its instructions or consider the evidence for an improper purpose."[4] *Id.* Moreover, the May 2019 robbery "did not occupy a disproportionate amount of the jury's time," taking up only part of one day of a four-day trial. *United States v. Ricard*, 922 F.3d 639, 654 (5th Cir. 2019). And there was minimal risk that the jury would believe Wilson "should be punished for that activity even if he [was] not guilty of the offense charged," *Beechum*, 582 F.2d at 914, because the jury was told that the robbery was being prosecuted in state court. In sum, a "commonsense assessment of all the circumstances surrounding the extrinsic offense" leads us to find the district court did not abuse its discretion in admitting the evidence. *Id.*

### C. Officer testimony identifying Wilson

Wilson argues that the district court plainly erred in permitting law enforcement officers to provide lay opinion testimony identifying Wilson as one of the perpetrators in the Circle H surveillance footage, contending that the testifying officers did not have personal familiarity with Wilson's

---

[4] Wilson argues the prosecutors urged the jury to consider improper inferences about the May 2019 robbery. However, we hold that these comments by the prosecutors relate to Wilson's intent to commit the charged crimes and are thus not improper.

appearance outside of the evidence available to the jury in violation of Federal Rule of Evidence 701.

When a witness identifies an individual captured in surveillance footage, it is considered lay opinion testimony. *United States v. Ebron*, 683 F.3d 105, 137 (5th Cir. 2012). The admissibility of lay opinion testimony is governed by Federal Rule of Evidence 701, which allows a witness to testify to a personal opinion as long as it is rationally based on the witness's perception and "helpful to the jury." *See United States v. Riddle*, 103 F.3d 423, 428 (5th Cir. 1997). Because Wilson did not object to this testimony at trial, we review this issue for plain error. *United States v. Masha*, 990 F.3d 436, 445 (5th Cir. 2021). To merit reversal, the legal error must be "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)).

Wilson's argument principally rests on other circuits' precedent, which is not controlling authority. *See United States v. Gonzalez*, 792 F.3d 534, 538 (5th Cir. 2015) (the "lack of binding authority is often dispositive in the plain-error context"). Instead, we have held that, to be admissible, "a lay opinion must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the jury." *Masha*, 990 F.3d at 445 (quoting *Riddle*, 103 F.3d at 428)). As Rule 701 indicates, lay opinion testimony may be helpful to the jury if it is "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fᴇᴅ. R. Eᴠɪᴅ. 701(b).

Here, the officers' testimony identifying Wilson was helpful to the jury despite their lack of personal familiarity with Wilson's appearance beyond the evidence presented to the jury. Understood in context, the officers were explaining the basis of their investigation and how they

12

determined Wilson was the perpetrator of the robberies with only circumstantial evidence, which is permissible testimony. At the very least, it is not clear or obvious, based on this court's precedent, that such testimony is impermissible under Rule 701. The district court did not plainly err in permitting the officers' testimony on this issue.

## D. Prosecutor's closing remarks

Wilson argues that the prosecutors made numerous improper remarks at trial, warranting vacatur of his convictions. "Improper comments by a prosecutor may constitute reversible error where the defendant's right to a fair trial is substantially affected." *United States v. Anchondo-Sandoval*, 910 F.2d 1234, 1237 (5th Cir. 1990) (citing *United States v. Lowenberg*, 853 F.2d 295, 301 (5th Cir. 1988)). Where, as here, the remarks were not objected to at trial, we review for plain error. *United States v. Bolton*, 908 F.3d 75, 94 (5th Cir. 2018). We consider three factors when determining whether to reverse a conviction based on improper prosecutorial remarks: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *United States v. Anderson*, 755 F.3d 782, 797 (5th Cir. 2014) (quoting *United States v. Palmer*, 37 F.3d 1080, 1085 (5th Cir. 1994)). When assessing the prejudice sustained by the remarks, the determinative question is whether they "cast serious doubt on the correctness of the jury's verdict." *Id.* (quoting *United States v. Guidry*, 456 F.3d 493, 505 (5th Cir. 2006)).

First, Wilson contends the prosecutors impermissibly relied on evidence not presented at trial. Specifically, he alleges that the prosecutors misstated that the May 2019 robbery was committed using blue gloves; that the Circle H surveillance photograph matched Wilson's facial tattoo; that the Circle H storeowner's testimony that he thought the robber knew him

referred to Weldon, not Wilson; and that Wilson could be linked to the charged robberies because he owned the clothing the robbers owned and had the same voice and tattoos as one of the perpetrators, among other similarities.

These remarks do not prejudice Wilson such that they cast serious doubt on the correctness of the jury's verdict. The May 2019 robbery was admitted only for a limited purpose, and a separate body of evidence described *supra* ties Wilson to the seven robberies, including the Circle H robbery. The misstatement regarding Wilson's facial tattoo was harmless considering that Wilson's photograph was submitted into evidence and does not show any facial tattoos. The other erroneous remarks also do not prejudice Wilson in any meaningful way due to the efficacy of the district court's jury instructions—the jury was instructed that the Government's arguments were not evidence, that it should rely on its own understanding of the evidence, and that its verdict must be based exclusively on the evidence. As we have already considered, the properly admitted evidence is sufficient to convict Wilson on Counts One and Three under plain error review.

Second, Wilson argues the prosecutors urged improper inferences about the May 2019 robbery by stating that he commits robberies to "support[] himself" and that it was "unbelievable" Wilson "wasn't involved" in the charged crimes in light of the extrinsic evidence. But these comments were fair inferences showing Wilson's intent to commit the charged crimes, for which evidence of the May 2019 robbery was properly admitted. Prosecutors explained that, in light of his unemployment, Wilson consistently intended to commit robberies as a means to support himself. These comments were not improper.

Lastly, Wilson states the prosecutors improperly bolstered law enforcement testimony by referring to the case as "good police work" and

"a really good investigation," among other phrases. One prosecutor also said of the law enforcement agents that "they have no incentive but to tell you the truth." "The test for improper vouching for the credibility of a witness is 'whether the prosecutor's expression might reasonably lead the jury to believe that there is other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the accused's guilt.'" *United States v. McCann*, 613 F.3d 486, 495 (5th Cir. 2010) (quoting *United States v. Ellis*, 547 F.2d 863, 869 (5th Cir. 1977)). We have previously held that prosecutorial statements regarding "whether [law enforcement] did a good job or a bad job was not a prejudicially improper subject for passing comment during argument." *United States v. Montemayor*, 684 F.2d 1118, 1125 (5th Cir. 1982). Wilson offered no reasons why the statements here are any different, and he did not explain why such statements might reasonably lead the jury to believe there is other evidence of guilt. Accordingly, the district court did not plainly err in allowing the prosecution to make these statements.

### E. Sentencing

Both parties agree that the district court miscalculated Wilson's criminal history under the Federal Sentencing Guidelines (the "Guidelines")—the court calculated that Wilson had three criminal history points rather than one. Wilson additionally challenges the district court's treatment of his conspiracy conviction as if he were convicted of all seven underlying robberies, with which the Government disagrees. Wilson did not raise these objections in the district court, so we review for plain error. *United States v. Nino-Carreon*, 910 F.3d 194, 196 (5th Cir. 2018); *United States v. Aderholt*, 87 F.3d 740, 743 (5th Cir. 1996).

The district court based its calculation of Wilson's criminal history points on his most recent felony conviction, which was associated with a fully suspended prison sentence with no term of imprisonment imposed. The

calculation of a defendant's criminal history under the Guidelines is governed by Sections 4A1.1 and 4A1.2, and suspended sentences or portions of sentences do not count towards criminal history points. *See* U.S. Sent'g Guidelines Manual § 4A1.2(a)(3) (U.S. Sent'g Comm'n 2018) ("A conviction for which the imposition or execution of sentence was totally suspended or stayed shall be counted as a prior sentence under § 4A1.1(c)."); *id.* § 4A1.2(b)(2) ("If part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended."). Because Wilson's most recent felony conviction was suspended, it should have been assigned one criminal history point—not three—which would have resulted in a lower Guidelines range of 168–210 months for Count One. Where, as here, "'a straightforward application of the [G]uidelines' reveals the error in applying a defendant's criminal history points, the error was clear and obvious." *United States v. Blanco*, 27 F.4th 375, 380 (5th Cir. 2022) (alteration in original) (quoting *United States v. Torres*, 856 F.3d 1095, 1099 (5th Cir. 2017)).

"[A] defendant's substantial rights are affected if: (1) a district court uses the Guidelines as a starting point; (2) the Guidelines calculation is incorrect; and (3) the record is silent as to what the district court might have done had the Guidelines range been correct." *Id.* at 381. All are true here— the district court used the Guidelines as a starting point, the calculation was incorrect, and the record is silent as to what the court might have done had the Guidelines range been correct. Accordingly, the district court plainly erred in its calculation of Wilson's criminal history points.

Wilson separately argues that the district court plainly erred in determining that each of the robberies alleged as overt acts under Count One's conspiracy charge should be treated as a separate count of conviction. Pursuant to Section 1B1.2(d) of the Guidelines, "[a] conviction on a count charging a conspiracy to commit more than one offense shall be treated as if

the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." In cases "in which the verdict or plea does not establish which offense(s) was the object of the conspiracy," however, this subsection should only be applied "with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense." U.S. Sent'g Guidelines Manual § 1B1.2, cmt. n.4 (U.S. Sent'g Comm'n 2018).

While the jury did not specify which robbery or robberies they relied upon to convict Wilson of the conspiracy charge, the district court explained that, in its view of the evidence, he was "getting involved in all these robberies as the jury convicted you." Evidence was introduced at trial that Wilson was involved in each of the seven robberies underlying Count One, and the district court's statement at sentencing indicates it would convict Wilson of each of the object offenses. On this record, we see no plain error.

## III.

Given the nature of our review, we find no errors in the trial and convictions below. However, the district court plainly erred in its calculation of Wilson's criminal history points, and therefore plainly erred in Wilson's sentencing. Accordingly, for the foregoing reasons, we VACATE Wilson's sentence and REMAND for resentencing. We AFFIRM the judgment of the district court in all other respects.