# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 4, 2011

Lyle W. Cayce
Clerk

No. 09-50863

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

TUCKER JAMES FLORES, also known as James Flores Tucker, also known as Tut; MICHAEL KEVIN JOHNSON, also known as Big Mike UNK,

Defendants – Appellants

Appeals from the United States District Court
for the Western District of Texas

Before JOLLY, ELROD, and HAYNES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Appellants Tucker James Flores ("Flores") and Michael Kevin Johnson ("Johnson") appeal their convictions and sentences for aiding and abetting possession with intent to distribute phencyclidine ("PCP"), a controlled substance. Flores challenges, on Fourth Amendment grounds, the admissibility of drug evidence obtained from the search of a home in Compton, California. Johnson challenges as extrinsic to the charged offense the admission of evidence of a PCP lab at his home and evidence that he participated in a controlled buy of PCP. Both Appellants contest the district court's assessment of a two-level sentencing enhancement for obstruction of justice, and Flores challenges the

No. 09-50863

two-point sentencing enhancement he received for playing a leadership role in the drug organization. We AFFIRM the judgment of the district court on all grounds except the finding that Flores was a leader or organizer for sentencing purposes. We therefore VACATE Flores's sentence and REMAND for resentencing.

I.

Appellants Flores (a.k.a. "Tut") and Johnson (a.k.a. "Unk") came under investigation after two individuals, transporting over 900 grams of PCP, were arrested near Pecos, Texas on February 18, 2008. Choyce Mitchell ("Mitchell") and Demetrius Williams ("Williams") explained to Texas law enforcement officials that they were transporting the PCP to Houston for distribution, and that the narcotics had been supplied by Flores and Johnson during a recent trip to Los Angeles, California. Williams and Mitchell testified that on or about the weekend of February 16 and 17, 2008, they arrived in Los Angeles after driving from Houston and coordinated a pick-up of PCP from Johnson, which then would be packaged by Flores at another location. Williams and Mitchell obtained the PCP from Johnson and dropped it off with other supplies at a house on South Central Avenue in Compton (the "Central Avenue house"), where Flores's sister lived and where Flores had requested that the narcotics be delivered for packaging. The next day, Williams and Mitchell retrieved the PCP, which was packaged in gallon-sized green bean cans, from the same house, and subsequently began their journey back to Houston. Their vehicle was stopped by Texas law enforcement en route, and a search of the vehicle yielded the PCP in question.

Thereafter, agents of the Drug Enforcement Administration's High Intensity Drug Trafficking Area Task Force in Alpine, Texas ("Texas DEA") began an investigation targeting Flores and Johnson. A confidential informant testified that he made a controlled buy of PCP from Johnson at his house in July

No. 09-50863

2008.  An agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") surveilled the buy and identified Johnson's house as the location of the transaction.  In November 2008, acting largely on information supplied to them by Texas DEA, Los Angeles law enforcement authorities executed search warrants on three residences in the Los Angeles area: (1) on South Royal Ridge in Anaheim (the "Royal Ridge house"); (2) on East Tichenor Street in Compton, where Johnson resided (the "Tichenor house"); and (3) on South Tajuata Avenue in Compton (the "Tajuata house").  Flores was located and arrested at the Royal Ridge house.  The police found a working PCP lab at the Tichenor house and a substantial supply of equipment used to package PCP at the Tajuata house.

The Tajuata house, which turned out to be the former residence of Flores's grandmother, was not the house that Texas DEA had actually intended for the Los Angeles authorities to search and was different from the physical description on the search warrant.  The address was entered on the search warrant—by accident, the government argues—after Texas DEA's surveillance of the original target home revealed that the vehicles located there were registered to the Tajuata address.  Texas DEA later communicated this incorrect address to Los Angeles police, who executed the search warrant.  The actual target home was the Central Avenue house—the home of Flores's sister, where Williams and Mitchell had dropped off the PCP and later retrieved it in packaged form.

Flores and Johnson were charged in a single-count indictment with aiding and abetting possession with intent to distribute PCP on or about February 18, 2008, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2.  Prior to trial, Flores filed a motion to suppress evidence found in a search of the Tajuata house, which was denied.  Johnson filed a motion in limine seeking to exclude evidence of the controlled purchase of PCP and the evidence derived from the search of the Tichenor house.  These motions were denied, and Flores and Johnson were ultimately convicted by a jury.  Flores was sentenced to 293 months in prison

No. 09-50863

and five years of supervised release; Johnson was sentenced to 324 months in prison and 10 years of supervised release. We have jurisdiction over their timely appeal under 28 U.S.C. § 1291.

## II.

Appellants challenge the admissibility of certain evidence and contest the basis for their sentences. We first address the evidentiary issues and then turn to Appellants' sentencing challenges.

## A.

Flores argues that the district court erred in denying his motion to suppress evidence obtained during the search of the Tajuata house in November 2008. He contends that the search of that residence violated his Fourth Amendment rights and that the evidence should have been suppressed. The district court held that Flores had no reasonable expectation of privacy in the Tajuata house, and thus no standing to challenge the search. The district court further concluded that, assuming Flores had standing to challenge the search, the good-faith exception to the exclusionary rule applies. We review the district court's factual findings for clear error and its ultimate determination of constitutionality *de novo.* *United States v. London*, 568 F.3d 553, 561 (5th Cir. 2009).

The district court, in explaining the lack of standing, found that Flores had produced no evidence that he resided or kept personal belongings at the Tajuata house, and no evidence that he had a right to exclude others from the premises. The evidence showed that Flores had moved out of the home two to three years prior to the search, and that no one was living there in November 2008. Although Flores had keys to the house, visited there occasionally to collect mail, and had durable power of attorney from the owner of the home (his grandmother), the district court concluded that Flores had failed to demonstrate a possessory interest in the property.

No. 09-50863

The Supreme Court has "left it to the sound discretion of the lower courts to determine the order of decision" between (1) whether the Fourth Amendment has been violated or (2) whether officers' conduct manifested objective good faith. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 821 (2009). It thus will be unnecessary for us to decide whether Flores had a reasonable expectation of privacy in the Tajuata house, because even assuming Flores has standing to challenge the search, the good-faith exception to the exclusionary rule applies under these facts.

We have consistently followed the Supreme Court's directive in *Leon* that, "[i]n the absence of allegations of judicial misconduct, 'suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *United States v. Gibbs*, 421 F.3d 352, 358 (5th Cir. 2005) (quoting *United States v. Leon*, 468 U.S. 897, 926 (1984)). In this case the district court correctly explained that, in addition to mistaken information provided to him by Texas DEA, the Los Angeles detective responsible for the search warrant application relied upon information obtained from his own research in completing the search warrant for the Tajuata house, including Flores's use of the Tajuata address in prior arrest records derived from police databases. The court further found no evidence indicating that the information supplied by Texas DEA—which cited the address to which vehicles parked at the Central Avenue house were registered—was provided in bad faith. In short, we conclude that the district court did not clearly err in any question of fact. Under these circumstances, and in the light of Flores's failure on appeal to demonstrate that Los Angeles police were dishonest or reckless in relying on the Tajuata house warrant, we conclude as a matter of law that the good-faith exception applies and the district court properly denied Flores's motion to suppress.

No. 09-50863

B.

We turn now to Johnson's evidentiary challenges.  Johnson contests the admission of evidence obtained from the search of his residence (the Tichenor house) in November 2008 and, secondly, evidence involving the controlled PCP buy in July 2008.  We review the district court's evidentiary rulings under the abuse of discretion standard.  *United States v. Navarro*, 169 F.3d 228, 232 (5th Cir. 1999).

1.

Johnson argues that the district court abused its discretion in overruling his objection to the November 2008 search and finding that evidence intrinsic to the charged offense.  Johnson asserts that the evidence obtained from the Tichenor house search, which took place nine months after the charged crime, was of a distinct event extrinsic to the offense and thus governed by Federal Rule of Evidence 404(b).  "We find 'other act' evidence to be intrinsic to the charged crime when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *United States v. Stephens*, 571 F.3d 401, 410 (5th Cir. 2009).  The government argues that the PCP lab discovered in the November 2008 search is "inextricably intertwined" with other evidence used to prove the crime of aiding and abetting possession with intent to distribute PCP, because it demonstrates the continuing nature and structure of the drug organization in which Johnson participated. The district court held that it was evidence of "continuing acts since the arrest of [Williams and Mitchell] in February of 2008."

We are persuaded that the district court did not abuse its discretion in determining that the evidence of PCP production obtained in the search of the Tichenor house was intrinsic to the crime charged.  This circumstantial evidence corroborates Williams's and Mitchell's testimony that they received PCP from

6

No. 09-50863

Johnson at the Tichenor house.  The evidence was discovered pursuant to a search warrant based in part on Williams's and Mitchell's statements to Texas DEA, and Johnson was arrested during the execution of that warrant.  Indeed, the statements from Williams and Mitchell prompted an investigation that placed Johnson under surveillance for some time subsequent to the February 2008 arrests.  That surveillance in turn supported the application for a search warrant for the Tichenor house.  Although one might speculate that the PCP lab at Johnson's house was begun after the arrest of Williams and Mitchell, the evidence we have recounted earlier weighs heavily against such a conclusion, especially when considered as a whole.  We thus conclude that the Tichenor house evidence is inextricably intertwined with evidence tending to prove that Johnson aided and abetted Williams and Mitchell to possess with intent to distribute PCP.

2.

Johnson also contests the admission of evidence that law enforcement observed him participating in a controlled buy of PCP in July 2008.  We find it unnecessary to resolve whether this evidence was extrinsic to the charged offense, and thus whether Rule 404(b) was implicated by its admission, because we conclude that any error in admitting this evidence was harmless. "Reversal is not required unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction.  When the other evidence of guilt is overwhelming, and the error would not have substantially influenced the jury's verdict, the error is harmless." *United States v. Hawley*, 516 F.3d 264, 268 (5th Cir. 2008).  Here, the government presented considerable other evidence connecting Flores to a PCP transaction at his home in Compton on the weekend at issue.  This evidence included detailed testimony from Williams and Mitchell, as well as the evidence of PCP production at the Tichenor house where Johnson lived.  In the light of this other evidence implicating Johnson in a scheme to aid

No. 09-50863

and abet possession with intent to distribute PCP, we conclude that any error in admitting evidence of the July 2008 controlled buy was harmless.

## C.

Flores and Johnson further challenge the sentencing enhancements assessed by the district court.  We first review their challenge to the district court's two-point enhancement for obstruction of justice, and then consider Flores's argument that the district court erred in concluding he was a leader or organizer of the drug organization.  We review the district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error.  *United States v. Perez*, 585 F.3d 880, 883 (5th Cir. 2009).

## 1.

Flores and Johnson contest the district court's finding that they committed perjury at trial and its consequent application of a two-level sentencing enhancement for obstruction of justice under U.S.S.G. § 3C1.1.  The court determined that both defendants intentionally provided false testimony by giving materially false statements at trial that were not the product of confusion, mistake, or faulty memory.  *See United States v. Dunnigan*, 507 U.S. 87, 95 (1993).  We note, by way of example, that Flores denied any involvement in the production, receipt, or handling of PCP, and denied having ever met Williams and Mitchell.  Johnson similarly testified that he had no involvement with PCP or with Williams and Mitchell on the weekend in question.  These and other material assertions were not worthy of credence in the light of the weight of the physical evidence, and were flatly contradicted by other witnesses and the ultimate finding of the jury.  We therefore conclude that the district court's factual findings and application of U.S.S.G. § 3C1.1 were not erroneous.

## 2.

Flores further argues that the district court erred in finding that the requirements for a leadership enhancement under the Sentencing Guidelines

No. 09-50863

were met. The Guidelines provide for a two-level sentencing enhancement "[i]f the defendant was an organizer, leader, manager, or supervisor" of criminal activity. U.S.S.G. § 3B1.1(c). In the district court, in both written and oral objections, Flores objected to this enhancement as unsupported by the evidence. The district court seems to have relied on the Presentence Investigation Report ("PSR"), which sought to summarize the trial testimony supporting this enhancement. A comparison of the PSR with the trial testimony, however, demonstrates that the PSR differs in several material respects from the actual testimony. For example, the PSR states that "Williams testified Flores would come down to Ho[u]ston to insure proper operation of the PCP distribution," a statement the district court repeated at sentencing. Although there is testimony from Williams and Mitchell that Flores had been to Houston, there is no clarity in that testimony that Flores did this in an oversight capacity for the distribution of PCP. Flores testified that he traveled to Houston regularly when he worked for two companies based in the Houston area, and that he had considered relocating his family there. At trial, Williams and Mitchell did not specify what Flores was doing when they had seen him in Houston. Because it appears that the district court relied upon the PSR's erroneous recitation of facts, we cannot determine whether the district court would have applied this enhancement if the trial testimony were correctly summarized. As a result, we cannot conclude that this error was harmless. We therefore vacate Flores's sentence and remand for further consideration and for resentencing.

III.

To recap, we hold that the good-faith exception applies to cure any error in the admission of narcotics evidence obtained from the search of the Tajuata house. We further hold that the district court did not err in admitting evidence obtained from a search of Johnson's home, and that any error in the admission of controlled-buy evidence against Johnson was harmless. The district court did

9

No. 09-50863

not err in applying a sentencing enhancement to both Appellants for obstruction of justice. The sentencing enhancement for Flores's leadership role, however, was based on an erroneous recitation of facts. Consequently, we AFFIRM the judgment of the district court in all respects, except as to the leadership enhancement for Flores. We VACATE the judgment only on the sentence of Flores and REMAND for Flores to be resentenced.

AFFIRMED in part, VACATED in part, and REMANDED.