# United States Court of Appeals for the Fifth Circuit

————————

No. 23-50675

————————

United States Court of Appeals
Fifth Circuit

**FILED**

December 20, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Emmanuel Antione Hemphill,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:22-CR-306-1

———————————————————————

Before Jolly, Graves, and Wilson, *Circuit Judges*.*

E. Grady Jolly, *Circuit Judge*:**

A jury convicted Emmanuel Antoine Hemphill, who represented himself during trial, of escape from custody under 18 U.S.C. § 751(a) and possession of a firearm by a felon under 18 U.S.C. § 922(g)(1). On appeal, Hemphill, now represented by counsel, argues that his convictions should be vacated because the district court erred in admitting certain evidence,

———————————

* Judge Graves concurs in the judgment only.

** This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

limiting his cross examination of a witness, and denying his motion to suppress. He also argues that his felon in possession of a firearm conviction is unconstitutional under the Commerce Clause of the U.S. Constitution. For the following reasons, we AFFIRM.

I.

In March 2022, the Bureau of Prisons transferred Hemphill, who was serving a sentence for conspiracy to possess with intent to distribute cocaine and for possession with intent to distribute more than 28 grams of cocaine, from a prison to a halfway house for the duration of his sentence. When he arrived at the halfway house, Hemphill participated in the halfway house's intake process. As part of this, Hemphill signed a form recognizing that he remained in custody, could not leave the halfway house without permission, and would be considered to have escaped from custody if he left the halfway house without permission.

Even so, ten days after arriving, Hemphill—with all his belongings in tow—left the halfway house without permission, never to return. His unauthorized departure was witnessed by Maria de le Garza, the halfway house's Residential Monitor. Although Hemphill later asserted that he left the halfway house because he was in danger, de la Garza and her supervisor were not aware of any danger faced by Hemphill at the halfway house.

After Hemphill's departure from the halfway house, de la Garza created an escape flier featuring Hemphill's photograph and a summary of his escape. Using this escape flier, Deputy U.S. Marshal Damian Fernandez procured a criminal complaint against and arrest warrant for Hemphill based on his escape.

Two months later, in May 2022, Bexar County Sheriff's Deputy Andrew Delgado noticed a white Chrysler 300 speeding on the highway. Delgado turned on his lights and sirens in an effort to pull the vehicle over, but

the driver—who would later be identified as Hemphill—did not pull over. Instead, he merged onto the interstate and continued driving for miles, forcing Deputy Delgado and, later, other law enforcement officers to pursue him. When Hemphill finally pulled over, he and his passenger, Tiwanika McDay, exited the vehicle and identified themselves as instructed.

When Deputy Delgado ran Hemphill's name through his law enforcement database, he discovered a federal warrant for Hemphill's arrest. When Bexar County Sheriff Deputy Joseph Gereb was speaking with McDay, she informed him that there were two firearms as well as drugs in the vehicle's glove compartment. At that point, Deputy Gereb and another officer on the scene searched the vehicle's glove compartment. They found and took possession of two pistols, methamphetamine, cocaine, marijuana, and a bottle of pills later identified as Xanax.[1] Hemphill and McDay were both arrested that day. While in custody, Hemphill wrote, signed, and had notarized an affidavit admitting that he owned all the contraband found in the vehicle.

Hemphill was indicted for escaping from custody in violation of § 751(a) and as a felon in possession of a firearm in violation of § 922(g)(1). He opted to represent himself. Before trial, Hemphill unsuccessfully moved to suppress evidence found during the search of his vehicle on the grounds that it was an unlawful warrantless search. Also prior to the trial, the Government informed Hemphill that it planned to present evidence regarding the drugs in his glove compartment. The Government asserted that this evidence was admissible as either intrinsic evidence or under Federal Rule of Evidence 404(b). Hemphill did not respond. As a result, the district court

---

[1] At some point the officers discovered that the Xanax was prescribed to McDay. Additionally, we note that the Presentence Investigation Report states that these pills were Buspirone Hydrochloride rather than Xanax as testified to by Deputy Delgado.

told the Government during the pretrial conference that it would be permitted to present this evidence at trial.

During the trial, the Government's case featured testimony from seven witnesses as well as dash and body camera footage documenting the traffic pursuit, Hemphill's arrest, and the search of Hemphill's vehicle. Because Hemphill did not stipulate to his prior felonies, the Government had San Antonio Police Sergeant Jesse Allen testify regarding Hemphill's prior felony convictions in support of the felon in possession of a firearm charge. As planned, the Government also offered evidence regarding the drugs discovered in the glove compartment. Although Hemphill did not present a defense, he objected to various evidence during the Government's case. He also insinuated, during his opening statement and cross examinations, that he was a "fall guy," that law enforcement had planted the guns in his glove compartment, and that the affidavit containing his admission was not genuine.

The jury ultimately found Hemphill guilty of both escape from custody and being a felon in possession of a firearm. Hemphill now appeals his convictions on five grounds.

## II.

On appeal, Hemphill argues that his convictions should be vacated because (1) the district court erred in permitting Sergeant Allen to testify that he was assigned to the San Antonio Police Department Gang Unit; (2) the district court erred in permitting Deputy Delgado to testify that the drugs found in his glove compartment appeared to be packaged for distribution; (3) the district court erred in limiting his cross examination of Deputy Fernandez; (4) the district court erred in denying his motion to suppress the evidence found in his glove compartment; and (5) § 922(g)(1) is unconstitutional under the Commerce Clause of the U.S. Constitution. We address each argument in turn.

No. 23-50675

A.

Hemphill first challenges Sergeant Allen's testimony with respect to his prior felony convictions. As noted above, Hemphill opted not to stipulate to his previous felony convictions. As a result, the Government had Sergeant Allen briefly testify about his 2012 investigation into Hemphill and Hemphill's resulting convictions for conspiracy to possess with intent to distribute cocaine and possession with intent to distribute cocaine in support of the felon in possession of a firearm charge.[2] Leading up to this testimony, the Government asked Sergeant Allen foundational questions, including where he worked within the San Antonio Police Department in 2012. Sergeant Allen responded that he was working with the San Antonio Police Department Gang Unit. The Government proceeded to ask four additional questions, the last of which related to whether Sergeant Allen became familiar with Hemphill's appearance during surveillance he conducted in 2012. At this point, Hemphill objected on relevance grounds. Without specifying which question or testimony he was objecting to, Hemphill asserted, "It's irrelevant to whether I was convicted or not." The district court overruled Hemphill's objection.

Hemphill now argues that Sergeant Allen's testimony that he was assigned to a gang unit in the police department and surveilled Hemphill was irrelevant.[3] He also asserts that this testimony was unfairly prejudicial because it implied that he was a drug-dealing gang member. Even so, Hemphill

---

[2] To convict Hemphill of being a felon in possession of a firearm under § 922(g)(1), the Government needed to prove that (1) Hemphill was a felon; (2) Hemphill knew he was a felon; (3) Hemphill knowingly possessed a firearm; and (4) the firearm traveled in interstate commerce. *United States v. Robinson*, 87 F.4th 658, 667 (5th Cir. 2023).

[3] Hemphill also asserts that Sergeant Allen testified about his work on a drug detail, but no such testimony appears in the trial transcripts.

5

specifically clarifies that he did not and does not object to Sergeant Allen's testimony that Hemphill was previously convicted of felonies and the introduction, through Sergeant Allen's testimony, of the written judgment associated with those felonies.

The Government responds that Sergeant Allen's testimony was relevant given Hemphill's refusal to stipulate to his prior felony convictions, and the Government's resulting burden to show the jury that Hemphill was indeed a felon for purposes of the felon in possession of a firearm charge. Specifically, it argues that Sergeant Allen's testimony as to his gang unit assignment and surveillance of Hemphill was necessary to establish that Sergeant Allen was familiar with Hemphill, and could credibly identify Hemphill in court as the individual previously convicted of felonies in 2012. The Government also argues that Hemphill was not unfairly prejudiced by Sergeant Allen's testimony because he never testified that Hemphill was involved in a gang. Further, any inference that Hemphill was a drug dealer stemmed from admission of the written judgment—something that was only necessary because Hemphill chose not to stipulate to his felony convictions.

1.

"Generally, we review a trial court's decision to admit evidence for abuse of discretion." *United States v. Williams*, 620 F.3d 483, 488 (5th Cir. 2010) (quoting *United States v. Akpan*, 407 F.3d 360, 373 (5th Cir. 2005)). If we find an abuse of discretion, we then engage in a harmless error review under which "[r]eversal is not required unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction." *United States v. Valenzuela*, 57 F.4th 518, 521 (5th Cir. 2023) (alteration in original) (quoting *United States v. Flores*, 640 F.3d 638, 643 (5th Cir. 2011)); *see also United States v. Meza*, 701 F.3d 411, 425 (5th Cir. 2012); *United States v. Clark*, 577 F.3d 273, 287 (5th Cir. 2009); *United States v. Sumlin*, 489 F.3d

683, 688 (5th Cir. 2007). But where the defendant did not timely object to the evidence, nor object to the evidence on the basis presented on appeal, we review the district court's evidentiary ruling for plain error only. *See Williams*, 620 F.3d at 488–89 (citing *United States v. Burton*, 126 F.3d 666, 671 (5th Cir. 1997)); *Sumlin*, 489 F.3d at 688.

The parties dispute whether Hemphill's objection to Sergeant Allen's testimony is preserved or unpreserved. Although we are dubious of Hemphill's claim that his objection was timely, we need not reach this question because his argument fails under the more stringent abuse of discretion standard. *See United States v. Moparty*, 11 F.4th 280, 295 (5th Cir. 2021) (declining to decide whether an objection was preserved or not where the defendant's argument failed under the abuse of discretion standard); *see also Sumlin*, 489 F.3d at 688–89 (finding that plain error review applies to testimony after a non-continuing objection but before a second continuing objection because that testimony was not timely objected to).

2.

In his opening brief, Hemphill seemingly hints that Sergeant Allen's testimony about his gang unit affiliation and surveillance of Hemphill in 2012 is "bad-character, propensity evidence" in violation of Federal Rule of Evidence 404(b). But the implicated testimony was merely foundational and went to Sergeant Allen's actions and knowledge rather than Hemphill's actions or character. In any case, Hemphill explicitly states that he is not challenging Sergeant Allen's testimony regarding his previous felony convictions or the admission through Sergeant Allen's testimony of the associated written judgment. We therefore review the admissibility of Sergeant Allen's

challenged testimony under Federal Rules of Evidence 401, 402, and 403 rather than Rule 404(b).[4]

Rule 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401. Rule 402 deems relevant evidence admissible unless the U.S. Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. FED. R. EVID. 402. Finally, Rule 403 states that relevant evidence can be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. "In reviewing Rule 403 findings, we give 'great deference to the [trial] court's informed judgment and will reverse only after a clear showing of prejudicial abuse of discretion.'" *Clark*, 577 F.3d at 287 (alteration in original) (quoting *United States v. Peden*, 961 F.2d 517, 521 (5th Cir. 1992)).

As we have noted, Hemphill's failure to stipulate to his previous felony convictions meant the Government had to prove this element of the felon in possession of a firearm charge through alternate means, namely the written judgment associated with his previous felonies. This task required proving that the Hemphill on trial was the same Hemphill convicted of felonies through that written judgment. Sergeant Allen's testimony as to his work for the San Antonio Police Department's Gang Unit and surveillance of

---

[4] Even were we to characterize Sergeant Allen's testimony as evidence of Hemphill's prior bad acts or character and evaluate it under Rule 404(b), Hemphill's argument would fail because evidence of a previous felony conviction is relevant and not unduly prejudicial for purposes of proving a felon in possession of a firearm charge where the defendant does not stipulate to his previous felony conviction. *See United States v. Jones*, 930 F.3d 366, 374 (5th Cir. 2019).

Hemphill in 2012 was certainly relevant and probative of whether he could credibly identify Hemphill as the Hemphill convicted of felonies in that written judgment. Hemphill's assertion that this foundational testimony was irrelevant is thus meritless.

Hemphill's further contention that this testimony was unduly prejudicial because it painted him as a drug-dealing gang member is also meritless. "[I]t is not enough simply to show that the evidence is prejudicial as virtually all evidence is prejudicial or it is not material." *Id.* at 288 (quoting *United States v. Rocha*, 916 F.2d 219, 239 (5th Cir. 1990)). "To warrant reversal, the prejudice must be unfair." *Id.* (quoting *Rocha*, 916 F.2d at 239). This court has upheld the admission of prior judgments of conviction in a felon in possession of a firearm case where the defendant similarly refused to stipulate to his previous felony conviction. *See Jones*, 930 F.3d at 374. If the details of a felony conviction itself are not unduly prejudicial, foundational information necessary to admit a prior written judgement can hardly be found unduly prejudicial. *See id.* Accordingly, the district court did not err in permitting Sergeant Allen's testimony regarding his gang unit assignment and surveillance of Hemphill in 2012.

Finally, even if the district court erred by admitting Sergeant Allen's challenged testimony, such error was harmless given the overwhelming evidence of Hemphill's guilt of escaping custody and being a felon in possession of a firearm. *See, e.g.*, *Clark*, 577 F.3d at 288.

## B.

Hemphill's second challenge concerns Deputy Delgado's testimony regarding the drugs found in his glove compartment. As described above, the Government advised Hemphill of its plans to admit evidence regarding these drugs as either intrinsic evidence or admissible Rule 404(b) evidence. The Government also raised this matter with the district court at the pretrial

conference.  Hemphill offered no response.  Although the district court did not clearly articulate whether evidence regarding the drugs was being admitted as intrinsic evidence or pursuant to Rule 404(b), it advised the Government that it would be "permitted to go into that area."

In accordance with this plan, the Government elicited testimony from Deputy Delgado about the drugs found in Hemphill's glove compartment. Specifically, the Government asked Deputy Delgado whether there "was anything about the baggies [of drugs] that were relevant to [him] in [his] training and experience as a sheriff's deputy?"  Hemphill did not object after this question.  Deputy Delgado responded, "Yes, it appeared that they were packaged with intent to be distributed."  After an additional question regarding what Hemphill was arrested for and an additional partial question regarding Hemphill's female companion McDay, Hemphill objected on relevance grounds.  He did not specify which question or testimony he was objecting to but explained "[i]t's irrelevant to the facts of the case" and that he was "on trial for weapons, not drugs."  The district court overruled this objection and the Government proceeded to ask Deputy Delgado what McDay was arrested for that day.

On appeal, Hemphill argues that Deputy Delgado's testimony that the drugs were packaged for distribution was irrelevant under Rule 401, not intrinsic evidence, and inadmissible under Rules 403 and 404(b) because no evidence of Hemphill's motive was required to prove the felon in possession of a firearm charge and because of its prejudicial nature.

The Government counters that this evidence was admissible under Rule 404(b) because it is probative of Hemphill's motive for possessing the guns—to protect himself and his drugs.  According to the Government, Hemphill's motive was relevant because of Hemphill's suggestions throughout the trial that he was the "fall guy" and that law enforcement had planted

the two guns in his car. The Government further argues that this evidence was not unduly prejudicial given the Government's need to challenge Hemphill's defense theory that he was the "fall guy," that the guns had been planted by law enforcement, and that his affidavit confession was forged.

### 1.

"We review the district court's admission of extrinsic offense evidence over a [Rule] 404(b) objection under a 'heightened' abuse of discretion standard." *Jones*, 930 F.3d at 373 (quoting *United States v. Jackson*, 339 F.3d 349, 354 (5th Cir. 2003)). "The burden is on the government to demonstrate 'that a prior conviction is relevant and admissible under [Rule] 404(b).'" *Id.* (quoting *United States v. Wallace*, 759 F.3d 486, 494 (5th Cir. 2014)).

The parties once again dispute whether Hemphill's objection to Deputy Delgado's testimony is preserved given the delay in Hemphill's making the objection and given Hemphill's only objecting to the testimony's relevance. Because Hemphill's argument cannot withstand review under a heightened abuse of discretion standard, we need not determine whether Hemphill's argument is preserved or whether unpreserved Rule 404(b) challenges are reviewed for plain error only. *See id.*; *Moparty*, 11 F.4th at 295; *Sumlin*, 489 F.3d at 688–89.

### 2.

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). Such evidence, which is sometimes referred to as extrinsic evidence, is inadmissible because evidence concerning a defendant's propensity to commit further criminal acts based on previous criminal acts is believed to bear too much weight with juries, who may in turn prejudge a defendant and deny him a fair opportunity to defend against a particular

charge. *Valenzuela*, 57 F.4th at 521 (citing *Old Chief v. United States*, 519 U.S. 172, 181 (1997)).  Extrinsic evidence of another crime or wrong may nonetheless be admissible for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  *Id.* (citing Fed. R. Evid. 404(b)(2)); *Sumlin*, 489 F.3d at 689 (clarifying that Rule 404(b) only applies to evidence of extrinsic acts).[5]

Extrinsic evidence of prior crimes or wrongs is admissible under Rule 404(b) if it satisfies the two-prong test articulated in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc).  "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character."  *Id.* at 911.  We determine relevance under this step using the standard prescribed in Rule 401.  *Id.*; *see also* Fed. R. Evid. 401 (defining relevance as "any tendency to make a fact [of consequence] more or less probable than it would be without the evidence").  Additionally, "[a]n extrinsic act is relevant to an issue other than the defendant's character if it is offered to prove one of the elements listed in Rule 404(b): 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'"  *United States v. Kinchen*, 729 F.3d 466, 472 (5th Cir. 2013) (first citing Fed. R. Evid. 404(b); and then citing *United States v. Sanders*, 343 F.3d 511, 518 (5th Cir. 2003)).

"Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other

---

[5] As previously noted, one of Hemphill's arguments with respect to Deputy Delgado's testimony is that it was extrinsic evidence rather than intrinsic evidence and therefore subject to Rule 404(b).  Although the Government argued that evidence regarding the drugs found in Hemphill's glove compartment was intrinsic evidence before the district court, it does not rely on this argument before us.  We thus assume without deciding that Deputy Delgado's challenged testimony was extrinsic evidence and proceed in our analysis.

requirements of [R]ule 403." *Beechum*, 582 F.2d at 911. Weighing probative value and unfair prejudice under Rule 403 "calls for a commonsense assessment of all the circumstances surrounding the extrinsic offense." *Valenzuela*, 57 F.4th at 522 (quoting *Beechum*, 582 F.2d at 914). Notably, in conducting our Rule 403 analysis, we give great deference to the district court's informed judgment. *Id.*; *Kinchen*, 729 F.3d at 473.

Here, the Government asserts that Deputy Delgado's testimony that the drugs looked like they were packaged for distribution is relevant to Hemphill's motive for possessing the firearms. It further argues that Hemphill's motive for possessing the firearms is relevant because the proximity between the drugs and the guns shows that Hemphill possessed the guns to protect himself and his drugs and undermines Hemphill's defense that he is the "fall guy" and that the guns were planted by law enforcement.

Although Hemphill is correct that the Government need not show motive to prove its felon in possession of a firearm charge, we have upheld the admission of extrinsic motive evidence in similar circumstances. *See Kinchen*, 729 F.3d at 472. For example, in *United States v. Kinchen*, we concluded that evidence of a defendant's prior possession of drugs and prior statement that he sold drugs to support his family were relevant to his motive in a subsequent drug dealing case. *Id.* at 472–73. We concluded this even though motive was not an element of the charged offense because it helped establish why the defendant wanted to commit the charged offense. *Id.* at 472. It also helped counter the defendant's strategy of portraying himself as merely a drug user rather than a drug dealer. *Id.* at 472; *see also United States v. Weems*, 322 F.3d 18, 25 (1st Cir. 2003) (holding that evidence of drug dealing at the house where defendant was arrested was admissible in a felon in possession of firearm case to establish that the defendant had a motive to carry a firearm).

Given Hemphill's strategy of suggesting that he was the "fall guy" and that the guns were planted by law enforcement, we agree with the Government. Evidence that the drugs were packaged for distribution supported the Government's theory that Hemphill possessed the guns to protect himself and his drugs. It also countered Hemphill's defense theory.

Turning to the second step, the Government argues that any prejudice stemming from Deputy Delgado's testimony as to the drugs was not unduly prejudicial. It also argues that the probative value of Deputy Delgado's testimony to Hemphill's motive to possess the firearms and to countering Hemphill's defense strategy is not substantially outweighed by any prejudice it creates. Hemphill posits that a jury in Texas was likely to view drug-dealing more punitively than possession of a firearm and, in turn, that the prejudicial nature of Deputy Delgado's testimony outweighed its probative value.

We again agree with the Government. As already discussed, Deputy Delgado's testimony that the drugs appeared to be packaged for distribution was highly probative of Hemphill's motive for possessing the two firearms. Hemphill himself rendered this evidence especially probative by persisting to claim he was the "fall guy" and that the guns had been planted in his car. Additionally, the jury learned that Hemphill had previously been convicted of drug-dealing crimes because Hemphill opted not to stipulate to his previous convictions. The jury also heard other testimony and saw photographs suggesting that the drugs were packaged for distribution that were not objected to by Hemphill. Given this additional evidence of Hemphill's drug-related activities, it is difficult to imagine how Deputy Delgado's testimony could be so prejudicial as to substantially outweigh its probative value.

Thus, we hold that the district court did not abuse its discretion in admitting Deputy Delgado's testimony that the drugs found in Hemphill's vehicle were packaged for distribution. Even if it were admitted in error, the

admission of this testimony would have been harmless error given the vast evidence of Hemphill's guilt of both offenses and the cumulative nature of the challenged testimony. *See Meza*, 701 F.3d at 425; *Clark*, 577 F.3d at 288.

## C.

Hemphill's third argument is that the district court improperly restricted his cross-examination rights when it did not let him break up a compound question he asked Deputy Fernandez. One of Hemphill's defense strategies with respect to the escape charge was to show the jury that Deputy Fernandez, who obtained the escape-related criminal complaint and arrest warrant against Hemphill, lacked personal knowledge of Hemphill's alleged escape. After multiple questions pertaining to Deputy Fernandez's lack of personal knowledge regarding Hemphill's alleged escape, Hemphill asked the following question: "Can you personally confirm by way of fact that no one at [the halfway house] forced the defendant to leave, gave him permission to leave, or instructed him to leave?" The Government objected on the grounds that this was a compound question. After the district court sustained this objection, Hemphill asked the district court, "Should I ask that separate?" The district court responded, "No. Let's move on." Hemphill did not object to this ruling. Instead, he continued with his cross examination and asked additional questions about Deputy Fernandez's personal knowledge of his alleged escape.

On appeal, Hemphill asserts what is effectively a Confrontation Clause violation. Hemphill argues that his inability to further question Deputy Fernandez about his personal knowledge of his alleged escape compromised his ability to test Deputy Fernandez's credibility. He also asserts that it contributed to the jury's decision to convict him of escape. The Government argues that the district court did not restrict Hemphill's cross examination, but simply disallowed a compound question. It also points out that

15

the district court allowed other questions and evidence concerning Deputy Fernandez's lack of personal knowledge as to Hemphill's escape.

1.

We usually review an alleged Confrontation Clause violation *de novo*, subject to harmless-error analysis. *United States v. Martinez-Rios*, 595 F.3d 581, 584 (5th Cir. 2010) (citing *United States v. Morgan*, 505 F.3d 332, 338 (5th Cir. 2007)). Where a defendant does not make a timely and specific Confrontation Clause objection, however, we review that challenge for plain error only. *Id.*

Although Hemphill asked the district court if he should ask his compound question in separate parts and the district court refused to allow this, Hemphill did not object to the district court's refusal and instruction to move on. Contrary to Hemphill's assertions, his lone question did not put the district court on notice of a possible Confrontation Clause issue. Hemphill's Confrontation Clause challenge is therefore unpreserved and subject to review for plain error only.[6]

Under plain-error review, Hemphill must show that (1) the district court erred; (2) the error was clear or obvious; (3) the error affected his substantial rights; and (4) we should exercise our discretion to correct the error because "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc) (alteration in original) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

2.

---

[6] *See infra* note 7 (analyzing Hemphill's Confrontation Clause challenge as preserved and subject to *de novo* review).

Although the Sixth Amendment guarantees a defendant the right to cross examine witnesses against him, a defendant's right to cross examination is not unlimited. *United States v. Bernegger*, 661 F.3d 232, 238 (5th Cir. 2011) (citing *United States v. Jimenez*, 464 F.3d 555, 559 (5th Cir. 2006)). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (noting also that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish" (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam))).

A defendant's right to cross examination is satisfied so long as the defendant is "permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Bernegger*, 661 F.3d at 238 (quoting *United States v. Diaz*, 637 F.3d 592, 597 (5th Cir. 2011)). To determine if a Confrontation Clause violation has occurred, we inquire into "whether the jury had sufficient information to appraise the bias and motives of the witness." *Id.* (quoting *United States v. Tansley*, 986 F.2d 880, 886 (5th Cir. 1993)).

Our consideration of the district court's decision begins and ends with the first element of plain error review because we conclude that the district court did not err in limiting Hemphill's cross examination. Hemphill had already asked several questions demonstrating to the jury that Deputy Fernandez lacked personal knowledge as to Hemphill's escape and relied on information from others when he sought a criminal complaint and arrest warrant against Hemphill. And the district court allowed Hemphill to ask additional questions on this subject after telling Hemphill he could not break up

his compound question. The jury therefore had adequate information to appraise Deputy Fernandez's credibility based on his lack of personal knowledge regarding Hemphill's escape and reliance on information from the halfway house's employees. *See id.* The district court was also well within its right at this point in Hemphill's cross examination to foreclose repetitive questioning. *See Van Arsdall*, 475 U.S. at 679. In any case, to the extent there was error, it did not affect Hemphill's substantial rights or seriously affect the fairness, integrity, or public reputation of the proceedings given the vast evidence supporting Hemphill's escape conviction.[7] *See Moparty*, 11 F.4th at 295.

## D.

Hemphill's fourth argument is that the district court erred in denying his motion to suppress evidence located during law enforcement's search of his vehicle. Specifically, Hemphill argues that the firearms and drugs found in his glove compartment should have been suppressed because neither the

---

[7] Even if we found Hemphill's Confrontation Clause challenge to be preserved, it would fail. *See Bernegger*, 661 F.3d at 237–38 (indicating that preserved Confrontation Clause challenges are reviewed *de novo*, subject to a harmless error analysis, and that where no Confrontation Clause violation occurred, the district court's limitation on cross examination is reviewed for an abuse of discretion). As noted, the district court did not violate Hemphill's Confrontation Clause rights. And, in any case, the district court did not abuse its discretion in limiting Hemphill's cross examination because Hemphill was nonetheless able to explore the issue of Deputy Fernandez's personal knowledge of his escape. He was therefore not clearly prejudiced. *See id.* at 237–39 (providing that a district court does not abuse its discretion in limiting a defendant's cross examination unless the limitations were clearly prejudicial in that a reasonable jury might have had a significantly different impression of the witness's credibility had defense counsel been permitted to pursue the questioning). Further, even if the district court had abused its discretion in limiting Hemphill's cross examination, such error would be harmless given the overwhelming evidence of Hemphill's guilt of escape.

No. 23-50675

automobile exception nor the inevitable-discovery doctrine permitted a warrantless search.[8]

1.

When reviewing the denial of a motion to suppress, we generally review "factual findings for clear error and legal conclusions about the constitutionality of the conduct of law enforcement officers *de novo*." *United States v. Montemayor*, 55 F.4th 1003, 1008 (5th Cir. 2022) (quoting *United States v. Beene*, 818 F.3d 157, 161 (5th Cir. 2016)). But "where, as here, the motion to suppress was delegated to a magistrate judge, and the aggrieved party failed to file objections to the magistrate judge's report and recommendation, despite being notified of the consequences of a failure to so object, our review is for plain error only." *United States v. Huerta*, 770 F. App'x 169, 170 (5th Cir. 2019) (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1420–23, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1)); *see also United States v. Seeley*, 331 F.3d 471, 471 (5th Cir. 2003), *abrogated on other grounds by Terrence Boyd v. United States*, 584 U.S. 395 (2018).

Under plain-error review, Hemphill must show that (1) the district court erred; (2) the error was clear or obvious; (3) the error affected his substantial rights; and (4) we should exercise our discretion to correct the error because "it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Huerta*, 770 F. App'x at 170 (citing *Puckett*, 556 U.S. at 135). Notably, we can affirm a suppression ruling on any basis supported by the record. *United States v. Clayton*, 98 F.4th 256, 263 (5th Cir. 2024).

---

[8] Although Hemphill twice notes that his motion to suppress was denied without a hearing, he does not brief this issue. We therefore do not consider it.

2.

Under the Fourth Amendment, "[w]arrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions." *Rountree v. Lopinto*, 976 F.3d 606, 609 (5th Cir. 2020) (alteration in original) (quoting *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002)). Two such exceptions are the automobile exception and the inevitable discovery doctrine. *Id.*; *United States v. Walker*, 49 F.4th 903, 909 (5th Cir. 2022). Because it is dispositive, we begin and end our analysis with the automobile exception.

The automobile exception to the Fourth Amendment allows law enforcement to conduct a warrantless search of a vehicle when there is probable cause to believe that the vehicle contains contraband or evidence of a crime. *Clayton*, 98 F.4th at 263; *United States v. Ned*, 637 F.3d 562, 567 (5th Cir. 2011). This exception applies to vehicles pulled over on the highway. *United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010) (noting that in a vehicle stop on a highway the vehicle's potential mobility supplies the exigency required to trigger the automobile exception).

"A law enforcement officer has 'probable cause to conduct a search when the facts available to [him] would warrant a [person] of reasonable caution in the belief that contraband or evidence of a crime is present.'" *Clayton*, 98 F.4th at 263 (alterations in original) (quoting *Florida v. Harris*, 568 U.S. 237, 243 (2013)). "The test for probable cause is not reducible to 'precise definition or quantification.'" *Id.* (quoting *Harris*, 568 U.S. at 243). Rather, showing probable cause requires only "the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Id.* (alteration in original) (quoting *Harris*, 568 U.S. at 244). In determining whether probable cause exists, we consider the totality of the circumstances. *Id.* (citing *United States v. Fields*, 456 F.3d 519, 523 (5th Cir. 2006)).

Here, the law enforcement officers had more than sufficient probable cause to support a search of Hemphill's vehicle. First, even though the police were in pursuit, Hemphill refused to pull over for several miles. Second, after running Hemphill's information, law enforcement learned that there was an active warrant for his arrest. Third, Hemphill's passenger, McDay, told law enforcement that the vehicle's glove compartment contained firearms and drugs. Together, these facts certainly indicated probable cause to believe that contraband or evidence of a crime was present in Hemphill's vehicle, permitting the officers to search it without a warrant.

Without support, Hemphill asserts that law enforcement needed to have probable cause to believe his car contained contraband or evidence of a crime when they pulled him over. This standard is not required under the automobile exception, though. *See, e.g.*, *Banuelos-Romero*, 597 F.3d at 765–69 (finding that probable cause existed for purposes of the automobile exception based on information learned after a car had been pulled over). Hemphill also makes much of the fact that he and McDay were out of the car and secured when his vehicle was searched. In doing so, however, he conflates the requirements of the automobile exception with the requirements of the search incident to an arrest exception. *Compare Clayton*, 98 F.4th at 263 (providing that a vehicle can be searched under the automobile exception when there is probable cause to believe that the vehicle contains contraband or evidence of a crime), *with Arizona v. Gant*, 556 U.S. 332, 343 (2009) (holding that a vehicle can be searched incident to a recent occupant's arrest when "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" or when "it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle'" (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004))).

Accordingly, because, after the lawful stop of Hemphill's automobile, law enforcement had probable cause to believe that Hemphill's vehicle

contained contraband or evidence of a crime, the automobile exception applied. Hemphill's vehicle could, in turn, be searched without a warrant. The district court therefore did not commit plain error in denying Hemphill's motion to suppress. Finally, because the automobile exception alone justifies law enforcement's search of Hemphill's car, we need not consider whether the inevitable discovery doctrine also applies.

## E.

Hemphill's final argument is that his felon in possession of a firearm conviction should be vacated because § 922(g)(1) exceeds Congress's authority under the Commerce Clause. As Hemphill concedes, however, we have consistently upheld § 922(g)(1)'s constitutionality under the Commerce Clause, including after the Supreme Court's decisions in *United States v. Lopez*, 514 U.S. 549 (1995) and *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012). *See United States v. Alcantar*, 733 F.3d 143, 145–46 (5th Cir. 2013).

Under the Fifth Circuit's rule of orderliness, one panel of our court may not overturn another panel's decision absent an intervening change in the law, such as by statute, the en banc court, or the Supreme Court. *Bonvillian Marine Serv., Inc. v. Pellegrin* (*In re Bonvillian Marine Serv., Inc.*), 19 F.4th 787, 792 (5th Cir. 2021). Because there has been no intervening change in law, we are bound by our prior precedents. We therefore conclude that this argument is foreclosed.

## III.

In sum, the district court did not err in admitting certain evidence, limiting Hemphill's cross examination, or denying Hemphill's motion to suppress, and Hemphill's felon in possession of a firearm conviction does not run afoul of the Commerce Clause. Accordingly, Hemphill's convictions for

No. 23-50675

escape from custody under 18 U.S.C. § 751(a) and possession of a firearm by a felon under 18 U.S.C. § 922(g)(1) are, in all respects,

AFFIRMED.